## MARGOLIN v. UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 254. Argued October 5, 1925.—Decided November 16, 1925.

1. Section 13 of the War Risk Insurance Act, as amended May 20, 1918, forbids an attorney to charge more than three dollars for any services rendered a beneficiary in respect of a claim under the Act for insurance on the life of a deceased soldier, when no action in court is instituted; and makes the violation of this prohibition a misdemeanor. P. 101.

2. So construed, the section is not in conflict with the Fifth Amendment. *Calhoun* v. *Massie*, 253 U. S. 170. *Id.*

3. Disregard of the plain language of a statute can not be justified by reports of the committees in Congress which recommended the bill, or by communications from the head of a Department incorporated in the reports. *Id.*

3 Fed. (2d) 602, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a sentence imposed by the District Court on the petitioner for receiving a fee of $1500 as compensation for services in preparing and presenting to the Veterans' Bureau a claim for insurance money under the War Risk Insurance Act.

*Miss Susan Brandeis* and *Mr. Benjamin S. Kirsh,* for petitioner.

The reports of the House and Senate committees accompanying the Bill, prior to enactment, and the communication of the Secretary of the Treasury, incorporated therein, establish, beyond doubt, that the limitation of $3.00 " for such assistance as may be required in the preparation and execution of the necessary papers " applies only to the clerical work of filling out a form. The trial judge and the Circuit Court of Appeals therefore erroneously construed the provisions of the Act in deciding that

a greater charge than $3.00 for useful, elaborate, and successful investigation and preliminary professional services was within the criminal prohibition of the statute. The reports of the committees are an important, and, indeed, a controlling aid in the construction of the statute. The intention of Congress with respect to the conduct prohibited under the enactment can be learned by reverting to the circumstances of the enactment. *Stafford* v. *Wallace,* 258 U. S. 495; *Duplex Co.* v. *Deering,* 254 U. S. 443; *Woodward* v. *De Graffenried,* 238 U. S. 284; *Ozawa* v. *United States,* 260 U. S. 178; *Holy Trinity Church* v. *United States,* 143 U. S. 457.

The criminal statute must be construed strictly against the Government, and liberally in favor of the petitioner. Effect must be given to every portion of the statute. A construction which renders part of the Act contradictory and repugnant to another must be avoided. The court is under a duty to construe the statute so as to render it harmonious and consistent in its entirety. The words " Except as herein provided " forbid merely " a charge for the particular services therein specified in excess of the limitations therein fixed." *United States* v. *Rodgers,* D. C. West Virginia, unreported. The limitation of compensation in the case of filling in of an affidavit of claim and in case of a law suit are the only two cases " herein provided." Elaborate investigation work and the discovery of facts upon which the claim is based are not provided for in the statute, and are not within the criminal prohibition of the Act. They are a subject matter upon which the Director of War Risk Insurance, in the absence of a prohibition upon his general powers, could properly announce rules and regulations. Since there is a limitation only on the Director's power with respect to the two specific items of filling in the form and the suit, there is no violation of the law by the petitioner in charging more than $3.00 for the comprehensive and useful professional

services which he rendered to his client. The phrase " that no claim agent or attorney shall be recognized in the presentation or adjudication of claims," is merely a limitation upon the power of an attorney or claim agent to represent the beneficiary, and is restricted to " presentation " and " adjudication." It does not render investigation work criminal.

A criminal statute must receive a reasonable, rational, and sensible construction in preference to one that is absurd, arbitrary, and unreasonable. The terms of the Act must be construed with relation to its object and the evils it was designed to remedy. The letter of the law must yield to the policy and spirit in order to avoid absurd consequences. The enormously disproportionate penalty prescribed by the statute, in contrast to the acts for which the petitioner was convicted, is another clear indication that the statute was designed to prohibit solely fraudulent, outrageous, and scandalous practices. The contrast in the wording of the prohibitions with respect to employment and compensation of attorneys contained in prior statutes, and the Act of May 20, 1918, under which the petitioner was convicted, clearly indicates that there was no criminal prohibition against the petitioner's charge for preliminary investigation work.

If the Act be construed so as to render criminal the receipt by an attorney of a sum in excess of $3.00, for elaborate and useful investigation work, and to nullify and make illegal an agreement between a client and the attorney for fair and just compensation in the investigation of a contract claim against the Government, it is oppressive, arbitrary, and unreasonable legislation, and in violation of the Fifth Amendment to the Constitution of the United States. Congress has no constitutional power to attach onerous and burdensome conditions, and to destroy contracts relating to the enforcement of a remedy, arising from private contract based upon a consideration, and

not a pension, bounty or other gratuity of the Government. By making void, illegal, and criminal the receipt of any adequate or appropriate fee by an attorney for the discovery of facts, the investigation of a claim, and any professional services, falling short of an actual judgment, in connection with a contract of insurance, Congress is, by legislative fiat, impairing the remedy it has granted to the client, and deprives the attorney, who has entered into a contract with the client for the effective enforcement of the remedy, of his liberty and property in violation of his constitutional rights. The effect of this legislation is to withdraw as a source of professional services, an extensive and lucrative field of practice, from which an attorney's professional work is derived. If this Act be held constitutional, like restrictions may be extended into every field in which the United States engages in a proprietary and business function. A capricious embargo by Congress against markets of a merchant is no more a deprivation of property than prohibiting an attorney from handling a class of cases which, but for the *ipse dixit* of Congress, would yield a profitable source of income. See dissenting opinion in *Calhoun* v. *Massie,* 253 U. S. 170; *Adkins* v. *Children's Hospital,* 261 U. S. 525; *Coppage* v. *Kansas,* 236 U. S. 1; *Adair* v. *United States,* 208 U. S. 161; *Frisbie* v. *United States,* 157 U. S. 160; *United States* v. *Hall,* 98 U. S. 343; *Ball* v. *Halsell,* 161 U. S. 72; *Kendall* v. *United States,* 7 Wall. 113.

*Calhoun* v. *Massie,* 253 U. S. 170, does not control the case at bar—for several reasons. It does not appear from the facts that the Omnibus Claims Act, considered there, was anything other than a moral, or gratuitous, assumption by the Government of a claim, where there was no legal obligation. There were further, as the majority opinion states, " special reasons " to the effect that no appropriation had been made by Congress. Finally, there

was not under consideration in that case the meagre and paltry fee of $3.00, but an adequate and liberal sum of 20% of the recovery. We would also state to the Court that the citation of the Act of June 12th, 1917, in the foot note in the opinion in that case, in so far as it is an indication of the constitutionality of certain generic enactments, is irrelevant in this case, because the Act of June 12th, 1917, dealt only with compensation and payments in the nature of pensions, and not with contracts of insurance discussed in the case at bar. Bearing in mind the effort of an attorney in a case of this character, and the total lack of compensation in the case of unsuccessful endeavor, we may well justify a charge of $1,500.00 as an attorney's fee for the collection of a sum, which will amount in the aggregate, to the sum of $12,360.00. The charge made of $1,500.00 also included hotel bills, railroad fares, and disbursements of various descriptions. *Taylor* v. *Bemiss*, 110 U. S. 42.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* and *Mr. Harry S. Ridgely,* Attorney in the Department of Justice, were on the brief, for the United States.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

An Act of Congress approved September 2, 1914, c. 293, 38 Stat. 711, provided for a Bureau of War Risk Insurance in the Treasury Department, directed it to insure American vessels, their freight, passage money and cargoes against war risks, and further authorized it to prescribe necessary rules and regulations. This was amended June 12, 1917, c. 26, 40 Stat. 102, so as to provide insurance for masters, officers and crews of American vessels; and the following new section was added—

" Sec. 5a. No claim agent or attorney shall be entitled to receive any compensation whatever for services in the

collection of claims against the Bureau of War Risk In-
surance for death, personal injury, or detention, except
when proceedings are taken in accordance with section five
in a district court of the United States, in which case the
judge shall, as a part of his determination and order, settle
and determine the amount of compensation not to exceed
ten per centum of amount recovered, to be paid by the
claimant on behalf of whom such proceedings are insti-
tuted to his legal adviser or advisers, and it shall be un-
lawful for any lawyer or other person acting in that behalf
to ask for, contract for, or receive any larger sum than
the amount so fixed."

An Act approved October 6, 1917, c. 105, 40 Stat. 398,
again amended the original Act, provided for Divisions
of Marine and Seamen's Insurance and of Military and
Naval Insurance, made definite provision for insuring
members of the military and naval forces, and added
another new section—

" Sec. 13. That the director, subject to the general direc-
tion of the Secretary of the Treasury, shall administer,
execute, and enforce the provisions of this Act, and for
that purpose have full power and authority to make rules
and regulations, not inconsistent with the provisions of
this Act, necessary or appropriate to carry out its pur-
poses, and shall decide all questions arising under the Act,
except as otherwise provided in sections five and four
hundred and five. Wherever under any provision or pro-
visions of the Act regulations are directed or authorized
to be made, such regulations, unless the context otherwise
requires, shall or may be made by the director, subject to
the general direction of the Secretary of the Treasury.
The director shall adopt reasonable and proper rules to
govern the procedure of the divisions, to regulate the
matter of the compensation, if any, but in no case to ex-
ceed ten per centum, to be paid to claim agents and at-
torneys for services in connection with any of the matters

provided for in articles two, three, and four, and to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits of allowance, allotment, compensation, or insurance provided for in this Act, the forms of application of those claiming to be entitled to such benefits, the method of making investigations and medical examinations, and the manner and form of adjudications and awards."

An Act approved May 20, 1918, c. 77, 40 Stat. 555, amended Sec. 13, above quoted, so that it should provide—

" Sec. 13. That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this Act, and for that purpose have full power and authority to make rules and regulations not inconsistent with the provisions of this Act, necessary or appropriate to carry out its purposes, and shall decide all questions arising under the Act, except as otherwise provided in section five. Wherever under any provision or provisions of the Act regulations are directed or authorized to be made, such regulations, unless the context otherwise requires, shall or may be made by the director, subject to the general direction of the Secretary of the Treasury. The director shall adopt reasonable and proper rules to govern the procedure of the divisions and to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits of allowance, allotment, compensation, or insurance provided for in this Act, the forms of application of those claiming to be entitled to such benefits, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards: *Provided, however,* That payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers

shall not exceed $3 in any one case: *And provided further,* That no claim agent or attorney shall be recognized in the presentation or adjudication of claims under articles two, three, and four, except that in the event of disagreement as to a claim under the contract of insurance between the bureau and any beneficiary or beneficiaries thereunder an action on the claim may be brought against the United States in the district court of the United States in and for the district in which such beneficiaries or any one of them resides, and that whenever judgment shall be rendered in an action brought pursuant to this provision the court, as part of its judgment, shall determine and allow such reasonable attorney's fees, not to exceed five per centum of the amount recovered, to be paid by the claimant in behalf of whom such proceedings were instituted to his attorney, said fee to be paid out of the payments to be made to the beneficiary under the judgment rendered at a rate not exceeding one-tenth of each of such payments until paid.

" Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment."

An Act approved August 9, 1921, c. 57, 42 Stat. 147, provided for the establishment of the Veterans' Bureau, with " the functions, powers and duties conferred by existing law upon the Bureau of War Risk Insurance."

Petitioner was found guilty under an indictment which charged that he unlawfully received fifteen hundred dollars as a fee and compensation for services in preparing and presenting to the United States Veterans' Bureau an affidavit executed by Yetta Cohen in support of her claim

for insurance money provided for by the Act approved
October 6, 1917, and amendments thereto. The trial court
imposed a fine of two hundred and fifty dollars and its
judgment was affirmed by the Circuit Court of Appeals.
3 Fed. (2d) 602.

It appears that Yetta Cohen retained petitioner, a member of the bar, to press allowance of her claim as a beneficiary designated in a policy issued to her nephew under
the War Risk Insurance Act. He corresponded with the
Veterans' Bureau, made one trip from New York to
Washington, where he examined records and interviewed
officials, and prepared the necessary papers. It may be
assumed that his services were useful and of some substantial value. For them he demanded two thousand
dollars and received fifteen hundred. The exceptions raise
the questions whether § 13, Act of May 20, 1918, forbids
an attorney from charging more than three dollars for any
services rendered a beneficiary in respect of a claim under
the War Risk Insurance Act when no action in court has
been instituted; and whether, if so construed, that section
offends the Fifth Amendment.

Petitioner claims that the inhibition against receiving
any sum greater than three dollars relates solely to the
clerical work of filling out the form or affidavit of claim,
and does not apply to useful investigation and preparatory
work such as he did. He insists that this view is supported by the reports of the committees of the Senate and
House of Representatives, which recommended passage
of the bill; also by a communication from the Secretary
of the Treasury, incorporated therein. See S. Rep. 429
and H. Rep. 471, 65th Cong., 2d Sess.

We find no reason which would justify disregard of the
plain language of the section under consideration. It
declares that any person who receives a fee or compensation in respect of a claim under the Act except as therein
provided shall be deemed guilty of a misdemeanor. The

only compensation which it permits a claim agent or attorney to receive where no legal proceeding has been commenced is three dollars for assistance in preparation and execution of necessary papers. And the history of the enactment indicates plainly enough that Congress did not fail to choose apt language to express its purpose.

The validity of § 13 construed as above indicated, we think, is not open to serious doubt. *Calhoun* v. *Massie,* 253 U. S. 170.

The judgment of the court below must be

*Affirmed.*

MR. JUSTICE BRANDEIS took no part in the consideration or determination of this cause.