## PURVIS v. UNITED STATES.
### No. 9416.

Circuit Court of Appeals, Eighth Circuit.
Nov. 30, 1932.

June P. Wooten, of Little Rock, Ark., for appellant.

Ira J. Mack, Asst. U. S. Atty., and Wallace Townsend, U. S. Atty., both of Little Rock, Ark.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellant, a practicing attorney of Little Rock, Ark., was tried and convicted upon an indictment which alleged the violation by him of the statute which limits the amount an agent or attorney may charge for assistance rendered in securing payment of war risk insurance.

The indictment charged that "one Walter M. Purvis furnished to Ed Walls and Amy Walls assistance in the preparation and execution of the necessary papers in the presentation and application to the United States Veterans Bureau of the claim of Ed Walls and Amy Walls for moneys claimed to be due them as beneficiaries of War Risk Insurance issued on the life of one Tim Walls under the provisions of the Act of Congress of the United States approved September 2, 1914," and that said appellant "did unlawfully, wilfully, knowingly and feloniously charge and attempt to charge and receive from the said Ed Walls and Amy Walls the sum of $1,380.00 as a fee and compensation for furnishing such assistance to the said Ed Walls and Amy Walls in the preparation and execution of said papers in said claim and application of the said Ed Walls and Amy Walls, and which said sum was then and there in excess of the sum which the said Walter M. Purvis was then and there entitled to charge and receive from the said Ed Walls and Amy Walls for such assistance so rendered."

The statute which it is claimed was violated, section 551, c. 10, title 38, USCA, provides in part as follows:

"Except in the event of legal proceedings under section 445 of this chapter, no claim agent or attorney except the recognized representatives of the American Red Cross, the American Legion, the Disabled American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the director shall be recognized in the presentation or adjudication of claims under Parts II, III, and IV of this chapter, and payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the bureau shall not exceed $10 in any one case: * * *

"Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive, any fee or compensation, except as herein provided, shall be guilty of a misdemeanor. * * * "

Motion was made at the conclusion of the government's evidence, and also at the conclusion of all the evidence, to direct a verdict for the defendant on the ground of the insufficiency of the evidence. This was overruled, and the case was submitted to the jury, which returned a verdict of guilty. Appellant was fined $100.

Some eleven specifications of error are urged. They allege error in the overruling of the motions for a directed verdict; error in permitting the government to introduce in evidence a complaint in a suit brought by the said Purvis against Ed and Amy Walls in the Circuit Court of Pulaski county, Ark., to recover from them the sum of $1,380 as damages for breach of a contract alleged by him to have been made with the Walls for services in securing war risk insurance; error of the court in refusing to give certain requested instructions to the jury, and in giving certain instructions of its own motion.

The court narrowed the case against appellant to one proposition in instructing the jury, as follows:

"Under the law it is a violation of our federal statutes, it is a crime, to either solicit, charge, or attempt to charge, or to receive a fee in excess of ten dollars, for services rendered to anyone to secure from the government insurance, unless suit is filed. So, unless Mr. Purvis filed a suit to recover from the government the amount of these two insurance policies and secured a judgment and a decree in their favor, it would be an offense, under the federal laws, for him to charge in excess of ten dollars for his services. If he did that, then he violated this section. * * *

"There is but one question for you to pass upon here; that is, did Mr. Purvis solicit from these two negroes thirteen hundred and eighty dollars, or any amount in excess of ten dollars for the services which he rendered or performed for them in securing their insurance. It matters not that he did render useful and valuable service to them. The government has made it an offense in these cases for any attorney to charge a fee in excess of ten dollars unless a suit is filed in a court."

The court also instructed the jury: " * * * The fact that he attempted to make this charge in the form of a suit in court when he had not brought suit for the

994

recovery of the insurance, would not constitute a defense here. If you believe that the demand was made in that form, it is just the same as if he had made the demand either by word of mouth, or by letter, or by some agent. The fact it is made in a court of law is not a defense here."

On the question of error in not directing a verdict it is necessary to review the evidence. Tim Walls was a negro soldier in the World War, and carried two war risk insurance certificates for $5,000 each, one payable to his wife, Amy Walls, and one to his brother, Ed Walls. He died intestate in November, 1920. For about eight years the beneficiaries of these policies had endeavored to have their claims paid. Several persons had worked upon the matter, but nothing had ever been realized. In February, 1928, Ed and Amy Walls employed appellant to assist them in securing the insurance. Appellant did considerable work, investigating the matter, gathering evidence, securing copies of records showing births, deaths, etc., looking to the creation of an administration in the state court on decedent's estate, and to the bringing of suit in the United States District Court on the war risk insurance certificates. He advanced his own expenses, and the Walls paid him $17 thereon. On May 18, 1928, Purvis wrote a letter to the United States Veterans' Bureau stating that Mrs. Amy Walls, widow of the veteran, had consulted him regarding her rights as such widow, and informed him that her husband was suffering with pulmonary tuberculosis when he was discharged at Camp Gordon, Ga., August 12, 1919. In this letter he said:

"From this woman's statement, I assume that no evidence has ever been furnished the Bureau relative to the tubercular condition of said veteran. It can be shown, however, that information relative to the veteran's disability was made known to local officials of the Veterans' Bureau prior to his death.

"Please advise me if evidence may now be submitted for consideration in connection with a claim for disability compensation in this case."

The record shows no response to this letter.

On May 20, 1929, two letters were sent to the director of the United States Veterans' Bureau, one signed by Amy Walls and the other by Ed Walls, with respect to these policies. We set forth the one signed by Ed Walls, which the evidence shows Purvis wrote, as follows:

"Woodson, Arkansas
"May 20, 1929
"Director, U. S. Veterans Bureau, Washington, D. C.
"Attention: General Counsel!
"Subject: Demand for payment, War Risk Term Insurance death benefits.
"Dear Sir: As brother of Tim Walls, deceased, whose Army Serial number was 3841581 and who was discharged from the United States Army at Camp Gordon, Georgia, August 12, 1919, while his two War Risk Term Insurance contract numbered 3586727 and 4394271, dated August 1, 1918, and October 4, 1918 respectively in the sum of $5,000 each were in full force and effect and of which insurance I am the beneficiary in the sum of $5,000, I hereby request and demand that you pay to me the accrued benefits due me as such beneficiary. I make this demand because my brother, Tim Walls, the insured, was totally and permanently disabled, within the meaning of his insurance contract from the date of his discharge from the United States Army to the date of his death.

"I am sending you this letter by registered mail in order that I may receive a receipt for its delivery to you. In the event your decision is adverse to my request relative to the payment of this insurance I respectfully request you to immediately advise me thereof by letter so that I may use your letter as evidence of the disagreement, contemplated by the World War Veterans Act, 1924, as amended.
"Yours truly,
"[Signed]   Ed Walls."

The evidence does not show that Purvis wrote the letter signed by Amy Walls, but it was written at the same time and is so identical with the letter signed by Ed Walls that there can be no question that he formulated the letter for her.

Ed Walls testified that he had consulted Purvis in the spring of 1928 about collecting the insurance. He then paid him $12. Purvis told him at different times that it would take money to fight the case and to file a suit in the United States District Court and that "Mr. Purvis came to Woodson and got up some affidavits about my brother's last sickness and presented them. I signed the letters introduced in evidence to the department making demand for payment."

The Walls settled the insurance certificates with the Bureau before any suits were commenced by Purvis, each receiving $3,157.95.

Purvis then commenced suit in the Circuit

Court of Pulaski county, Ark., to recover damages in the sum of $1,380 for alleged breach of the contract he claimed to have made with them. This case was decided adversely to Purvis in the Circuit Court and in the Supreme Court of Arkansas. Purvis v. Walls, 184 Ark. 887, 44 S.W.(2d) 353. The Supreme Court held that under section 551, c. 10, title 38, USCA, supra, he could not receive a fee to exceed $10 in each claim, or a total of $20.

After Purvis filed his suit to recover damages from the Walls he wrote to Ed Walls in part as follows:

"Suite 508 Home Insurance Bldg.,

"Little Rock, Arkansas
"November 8th, 1930.
"Ed Walls, Colored, Woodson, Arkansas.

"Dear Sir: As you were advised by the officials of the Federal Bank I have procured writs of garnishment to impound any funds you may have in Little Rock Banks. I took this action in connection with a suit that I have filed against yourself and Amy Walls to collect the fees that I earned in connection with a claim for Tim Walls' insurance.

"Of course you will not be able to use any of the money that you have in the bank that is impounded by the court under writs of garnishment until this matter is disposed of.

"I am truly sorry (ink) that it is necessary for me to take this action to collect a fee for the services that I rendered to you and Amy Walls because it is certainly very distasteful to me to sue my clients for services rendered to them.

"If you want to dispose of this matter with the minimum expense you may come to see me about it promptly. Or you may confer with my attorney, Judge G. W. Hendricks, of Carmichael & Hendricks. * * *

"Yours very truly,
"[Signed] Walter M. Purvis."

On February 12, 1931, Purvis wrote a letter to Ed and Amy Walls regarding the suit he had pending against them wherein certain funds of theirs were impounded in the Federal Bank & Trust Company under writ of garnishment, in which he said:

" * * * As each of you are aware, I am basing my suit on a claim for a fee due me as an attorney in a claim that each of you had against the United States as beneficiaries of War Risk Insurance contracts issued to Tim Walls, deceased. Had you performed your duties in this matter my fee would have been paid by order of the United States District Court. Therefore, it is my contention that I have earned this fee.

"If each of you are willing to pay the amount that is due me for services rendered to you in collecting said insurance you may come to the Pulaski County Court house with D. S. Soward and I will meet you there. Conditioned that you are willing to confess judgment for the amount you owe me. If you do this I will then have the Clerk issue a release to the Federal Bank & Trust Company so that the balance of the money due you may be released and paid to you at once."

In his testimony Purvis explained these letters as having been written after the suit was filed, and that he made use of the word "fee" or "claim" instead of "damages" because he thought the Walls would understand them better; that he had explained to them the court would allow a fee not exceeding 10 per cent. out of recovery; and that there was other correspondence not in evidence which had been sent to the Walls explaining that the word "fee" referred to in the letters meant "damages" for the breach of the contract. He testified that it was his understanding that in order to file a suit on a war risk insurance claim there must be a disagreement, and that "there was a disagreement in this case long before I heard of the case."

It is the theory of the government that the statute claimed to be violated fixed the fees which an attorney could receive in matters pertaining to recovery of war risk insurance, viz., a sum not to exceed $10 for assistance in the preparation and execution of the necessary papers in any application to the bureau, or, if suit was brought, such sum as a part of a judgment recovered as the court might allow, not exceeding 10 per cent. thereof, and that any attempt to solicit, contract for, charge, or receive any fee or compensation, except as so provided, was a misdemeanor, and that Purvis did attempt to receive compensation otherwise than as provided in the statute.

It is the position of appellant that he made a contract with Ed and Amy Walls to bring suits in the federal court on their certificates of war risk insurance, and that his suit in the state court against them after their settlement with the bureau was for damages for breach of this contract, and not to recover a fee; that he could not have presented any application for the insurance to the bureau as he was not a representative of any of the four organizations referred to in

the statute, and did not assist the Walls in presenting any such application to the bureau; that he never sent them a bill, nor made a charge on his books against them; that, if he had instituted suit on the certificates, there would have been a recovery of $13,800, out of which the court would have allowed him $1,380 as a fee; that by the Walls having settled with the bureau before suit he was damaged to this amount; and that he had a right to sue on his contract in the state court to test the question of his right to damages as distinguished from a fee or compensation for services actually rendered, and could not be deprived of access to the state court for this purpose by congressional enactment.

Purvis brought no suit on behalf of the Walls—hence he does not come under the provision of the statute with reference to the court allowing a fee. His theory is that he also does not come under the other provision allowing a fee of not over $10 for assisting in preparing necessary papers in an application to the bureau, and that his rights arise under and are governed exclusively by his contract with the Walls. This record does not show whether prior to Purvis' employment a formal application had been filed with the bureau for the insurance. Other parties had sought to help the Walls—who and how does not appear. While Purvis did not file any formal application, soon after his employment he wrote to the bureau the letter of May 18, 1928, heretofore referred to, in which he asked to submit evidence for consideration in a claim for disability compensation, referring to the Amy Walls claim. He prepared letters for the Walls to sign demanding accrued benefits due under the certificates. Surely this was furnishing such assistance in the preparation of papers as he regarded necessary to present to the bureau the claims of Ed and Amy Walls for the insurance. Negron v. United States (C. C. A.) 30 F.(2d) 584.

It is argued that as Purvis was not authorized to present matters to the bureau he cannot be convicted for so doing. Section 551, supra, refers to any person, not merely an agent or attorney recognized by the bureau. Surely an attorney not representative of any of the four organizations referred to in the statute may not assist in the preparation and execution of necessary papers in an application to the bureau for payment of a claim for war risk insurance and thus avoid the statutory limitation of his fee, on the theory that he was not authorized to present the claim at all. Appellant having rendered the very services contemplated by the statute in limiting the fee to be charged, the question is whether he had a right to attempt to collect $1,380 as damages for breach of his alleged contract without violating the statute. The complaint filed in the state court shows the scope of this alleged contract as follows:

"It was then and there agreed by and between the plaintiff and the said defendants that the plaintiff would render them such legal services as was deemed necessary in the premises to aid them in presenting and prosecuting their claim for the collection of the insurance benefits due them as said relatives of the said Tim Walls, who died intestate in Pulaski County, Arkansas, about November 7, 1920, and as beneficiaries respectively of said insurance contracts; and that the plaintiff would receive therefor only such compensation as was provided by the laws of the United States to be paid for attorneys for such services. * * *

"It was further agreed by the plaintiff and the defendants that in the event plaintiff found the law to be such that a suit in court could not be instituted and maintained, at that time, that the aforesaid agreement would continue in full force and effect so long as plaintiff decided to pursue his efforts to prosecute said claim for defendants, so that by the act of defendants plaintiff would not lose the fruits of his labor, namely, the attorney's fee allowed by law."

It may be noted that his contract was not limited to services to be rendered in bringing suit, nor did it confer upon appellant an indefeasible right to bring suit—it was for services rendered in collecting the insurance whether from the bureau without suit or upon suit, and the evidence shows Purvis proceeded on this theory, and that the services rendered consisted in helping with applications and demands to be presented to the bureau as well as in work preparatory to bringing suit. He very clearly contemplated the possibility that the claims might be paid without suit. And had the bureau responded to the applications and demands prepared by appellant by paying the claims in full, as it was free to do, he would not only have fallen squarely within the statutory provision limiting his fee, but would also have lost all right under his alleged contract to obtain a larger fee by bringing suit in court. Under those circumstances an attempt in the state court to collect $1,380 as "damages" for breach of the alleged contract would have been so palpable an attempt to circumvent the statutory

provision limiting his fee as to be violative thereof.

And we are of opinion the circumstances are not materially different in the instant case. The alleged contract, in granting to Purvis a continuing right to bring suit, did not by its terms refer at all to the exigency of the Walls compromising their claims, but only to the event plaintiff found the law to be such that a suit in court could not be instituted and maintained, at that time. Construed as precluding the compromise of the claims, and as requiring suit solely for the purpose that Purvis might receive a larger fee, the contract would have been clearly illegal. As it is said in 11 Corpus Juris, page 247, "By the great weight of authority a contract with an attorney, in which it is agreed that the attorney shall prosecute the claim and receive a fee from the amount to be recovered and that the claim shall not be compromised without the consent of the attorney, is void, although in some jurisdictions the courts in construing special statutes on the subject have upheld such contracts as valid." In the instant case the only statute applicable, section 551, supra, would certainly not seem to favor the validity of such a contract.

Any contract of the nature here involved must necessarily take into consideration the following factors: (1) The compensation contracted for is to be the quid pro quo of the services to be rendered; (2) "damages," in the event of breach, are simply a substitute for the agreed compensation; (3) the amount of compensation is subject to the overriding provisions of the act of Congress, which establish one maximum in case suit is brought, and another maximum in case suit is not brought; (4) in many instances where suit is not brought the services rendered will be to a very considerable extent of the same nature and amount as though suit were brought; and (5) up to the time it is actually brought the possibility that suit may never be brought is ever present.

This being so, it would seem that an attempt by an attorney to assure himself, as the quid pro quo of services to be rendered, albeit as "damages" for breach of contract, of the same amount of compensation in the eventuality of suit not being brought as the law assures him of in the eventuality of suit being brought, is in itself an attempt to circumvent section 551, supra, and charge a larger fee than that statute allows. A fortiori an attempt to enforce such a contractual provision is a violation of the same statute.

Appellant argues that he should at least be given an opportunity to submit the question to a proper tribunal for adjudication, and thus "test" his right to recover "damages" without thereby violating the statute. But the answer is that criminal statutes may not be thus "tested" with immunity. In however good faith one may act, the desire to determine whether a particular act falls within or without a criminal statute is no defense to its penalties, if it be found to fall within. Furthermore, however solicitous Purvis may have been to present a test case to a competent tribunal for adjudication, he nevertheless would have been entirely happy to forego the adjudication and have the Walls confess judgment for the amount of his suit against them, as appears in his letter to them of February 12, 1931. And Ed Walls testified that, after the suit had been commenced, Purvis told him that, "if we would pay him six hundred fifty dollars apiece, he would get the bank to release the money." The commencing of suit against ignorant and uneducated people is not an unknown form of intimidation.

That Purvis himself regarded his suit against the Walls as one for a fee for services rendered appears in the correspondence heretofore set forth. He wrote them that he had brought suit "to collect the fees that I earned in connection with a claim for Tim Walls' insurance." And in his letter of February 12, 1931, referring again to the suit and to the impounding under writ of garnishment of funds which the Walls had on deposit in Little Rock banks, he said that he was basing his suit on a claim for a fee due him as an attorney "in a claim that each of you had against the United States as beneficiaries of War Risk Insurance contracts issued to Tim Walls, deceased," and offered therein to make settlement conditional upon their confessing judgment for the amount he claimed they owed him. His own explanation that he used the word "fee" as a word the Walls would understand was an exceedingly lame one, which the jury were free to disregard. Besides, the meaning actually conveyed to the Walls as reasonable people is the meaning by which appellant will be bound, and which is significant in determining whether or not he was charging them a fee; and as reasonable people they would hardly have understood the word "fee" to mean the "legal damages for breach of contract" which it would be most difficult for a court itself to figure out.

Had the contract provided that in the event of breach the Walls would pay appel-

lant the sum of $1,380 as "liquidated damages," we cannot think there would have been any doubt but that the making, let alone the attempted enforcement, of such a provision would have been a violation of the statute. Yet was the situation in the instant case materially different? The court correctly told the jury that the demand for a fee greater than the statute allows may be made by suit in court as well as by word of mouth, letter, agent, or other more usual channel. The complaint filed in the state court was, we think, admissible as evidence of a demand made upon the Walls for a fee of $1,380. The issue as put to the jury by the court was not whether or not appellant had filed this complaint, on an instruction that its mere filing was tantamount to guilt, but was whether or not appellant had, in this form or otherwise, demanded "from these two negroes thirteen hundred and eighty dollars, or any amount in excess of ten dollars for the services which he rendered or performed for them in securing their insurance." And with the aid of appellant's letters to the Walls, referred to above, the jury were entirely warranted in finding that in filing suit appellant thereby attempted to collect a fee in excess of the amount allowed by law.

The proposition urged that federal statutes cannot prescribe the qualifications of suitors in state courts is beside the point. Here there has been no attempt to do so. Appellant had an undoubted right to make a contract with the Walls for compensation for his services, and to sue thereon; but the amount of the compensation contracted for, or sued for, must not exceed the maximum allowed by the statute for the particular services rendered. The question is not one of appellant's right to make a contract, or to sue thereon—it is whether he attempted thereby to secure or receive a fee in excess of that allowed by section 551, supra. If he did, then he has violated that statute.

There is no reason why Congress, having created a plan of war risk insurance for the benefit of the soldiers, may not limit the compensation an attorney or agent may receive for assisting the beneficiary in securing benefits due him. Congress can impose such limitations in this connection as it may deem desirable. If a contract for compensation for services rendered in securing payment of war risk insurance claims were a legitimate defense where an attorney is charged with soliciting or receiving fees prohibited by the statute, a large loophole would be opened for

circumventing the statute by all manner of subterfuge.

A similar statute was strictly enforced in Margolin v. United States, 269 U. S. 93, 46 S. Ct. 64, 70 L. Ed. 176. The statute there involved, section 13 of the War Risk Insurance Act as amended by the Act of May 20, 1918, section 1, 40 Stat. 555, provided that an attorney could not charge more than $3 for services rendered the beneficiary of a war risk insurance claim, unless suit was brought. It also provided, just as section 551, supra, does, that any person who should directly or indirectly attempt to solicit, contract for, charge, or receive any fee or compensation except as provided therein would be guilty of a misdemeanor. In affirming a conviction under this section the Supreme Court of the United States said, at pages 101, 102 of 269 U. S., 46 S. Ct. 64, 65: "We find no reason which would justify disregard of the plain language of the section under consideration. It declares that any person who receives a fee or compensation in respect of a claim under the act, except as therein provided, shall be deemed guilty of a misdemeanor. The only compensation which it permits a claim agent or attorney to receive where no legal proceeding has been commenced is $3 for assistance in preparation and execution of necessary papers; and the history of the enactment indicates plainly enough that Congress did not fail to choose apt language to express its purpose.

"The validity of section 13, construed as above indicated, we think, is not open to serious doubt. Calhoun v. Massie, 253 U. S. 170, 40 S. Ct. 474, 64 L. Ed. 843."

Similarly with the statute involved in the instant case—there is no ambiguity, the language is clear and it was undoubtedly adopted by Congress to prevent the fleecing of beneficiaries under these war risk insurance certificates, and, if an attorney or agent is not willing to abide by the statute and run the risk of receiving only $10 as a fee for all work done in case suit is not brought, he is under no obligation to take the case. He cannot avoid the provisions of the act by any contract. Lopez v. United States (C. C. A.) 17 F.(2d) 462. The alleged contract in the instant case is no defense.

Appellant's contention that he was entitled to reimbursement for expenses advanced is beside the point. His suit in the state court was not confined to the expenses he had advanced; and it is upon his demand there made for a sum far in excess of the expenses

he had advanced that the indictment herein is based.

There was no error in the court's overruling the motions to direct a verdict.

Complaint is also made of the refusal of the court to give seven requested instructions and of the giving of a general instruction in which the court told the jury that, if the demand for more than the statute allowed was made in a suit, it was the same as if the demand had been made by word of mouth or letter or by some agent, and the fact that it was made in a court of law was not a defense. If the court was correct, as we hold it was, in thus instructing the jury, then the requested instructions were not material. In its general instruction the court did not use the language of the statute or of the indictment, but it covered the question at issue and reduced the case to a very narrow compass. It is of course true that the instruction, coupled with the court's refusal to give the requested instructions, completely wiped out the defenses proposed by appellant. But this is immaterial so long as the defenses are unsound and cannot stand. It seems to us the theory adopted by the court is correct. There was therefore no error in refusing the requested instructions or in giving the instructions objected to. It is clear that appellant is at least technically guilty of a violation of the statute. The judgment of the District Court is therefore affirmed.