## HINES, ADMINISTRATOR OF VETERANS' AFFAIRS, *v.* LOWREY, COMMITTEE OF THE PERSON AND ESTATE OF GARMES.

No. 24. Argued October 19, 1938.—Decided November 7, 1938.

*Mr. Edward E. Odom,* with whom *Messrs. James T. Brady* and *Y. D. Mathes* were on the brief, for petitioner.

*Mr. William Dike Reed* for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Section 500 of the World War Veterans' Act [1] (as applicable here) prohibits the recognition of attorneys or

---

[1] "Amount permitted to be paid agents or attorneys; solicitation, etc., of unauthorized fees or compensation; punishment. Except in the event of legal proceedings under section 19, Title I of this Act, no claim agent or attorney except the recognized representatives of the American Red Cross, the American Legion, the Disabled

claim agents in the presentation or adjudication of veterans' War Risk Insurance claims; limits to ten dollars the payment for assisting in the preparation and execution of an application to the Veterans' Bureau; permits a court—rendering a favorable judgment or decree on a veteran's claim—to allow the veteran's attorney a fee not to exceed ten per cent of the amount recovered; and makes soliciting or obtaining any fee greater than the statute provides a crime subject to a maximum punishment of a $500 fine and two years imprisonment.

A committee (guardian appointed by a New York state court) for an insane veteran retained an attorney to prosecute the rights of the incompetent on a War Risk Insurance contract. The New York court was petitioned for an attorney's fee of $3,000. Upon hearing, it appeared that the attorney had performed services of an investiga-

American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the director shall be recognized in the presentation or adjudication of claims under Parts II, III, and IV, of this Act, and payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the bureau shall not exceed $10 in any one case: *Provided, however,* That wherever a judgment or decree shall be rendered in an action brought pursuant to section 19 of Title I of this Act, the court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered, and to be paid by the bureau out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid. Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment." 43 Stat. 628, as amended 43 Stat. 1311, c. 10, 38 U. S. C. 551.

tional and preparatory nature in the prosecution of the veteran's claim; that contrary to § 500, he had been recognized by the Bureau and permitted to join with a representative of the Disabled War Veterans in presenting the claim to the Bureau; and that subsequently, but without litigation, judicial decree or judgment against the Government, the Government paid the guardian an amount in excess of $10,000 on the claim. The New York court allowed a fee of $1,500 for the attorney's services, over the objection of the Administrator of Veterans' Affairs, who intervened and insisted that § 500 prohibited any fee in excess of $10 in this case.[2] We can assume, in the consideration of questions here presented, that valuable services were rendered by the attorney.

Respondent seeks to sustain the $1,500 fee upon the theory that the general power of the New York court to fix fees for services rendered an incompetent under that court's jurisdiction is not subject to the limitation of $10 for fees as provided in § 500. He urges that the present case is controlled by the decision in *Hines* v. *Stein*, 298 U. S. 94, 98. In that case the Court said, "Nothing brought to our attention would justify the view that Congress intended to deprive state courts of their usual authority over fiduciaries, or to sanction the promulgation of rules to that end by executive officers or bureaus." This language did not refer to § 500, which we now consider, but was a construction and interpretation of rules promulgated by the Administrator of Veterans' Affairs under authority of §§ 4 and 7 of an Act of March 20, 1933, c. 3, 48 Stat. 9, which rules were traceable to §§ 111, 114 and 115, Title 38, U. S. C. These Code sections are based upon an Act passed in 1884.

---

[2] The Administrator appealed and the Appellate Division affirmed. 252 App. Div. 779; 300 N. Y. S. 603. The Court of Appeals of New York denied the Administrator's motion for leave to appeal. 13 N. E. 2d 478. This Court granted certiorari.

Obviously, the interpretation given rules promulgated in furtherance of a line of legislation dating from 1884 cannot be accepted as controlling in determining the intent and effect of a separate and distinct Act (§ 500) differing in form, substance and historical background. The rules and statutes construed in *Hines* v. *Stein, supra,* have no bearing on this case, which must be determined by the application of § 500.

Section 500 is one in a series of congressional efforts to limit fees of claim agents and attorneys in the prosecution of veterans' insurance and related claims. Shortly after the United States entered the World War, Congress provided a comprehensive statutory plan of War Risk Insurance for soldiers and sailors.[3] Section 13 of that statute contained this provision: "The Director shall adopt reasonable and proper rules . . ., to regulate the matter of the compensation, if any, but in no case to exceed ten per centum, to be paid to claim agents and attorneys for services in connection with" collection of soldiers' and sailors' benefits.

May 20, 1918, Congress amended § 13 of the 1917 Act.[4] The House report shows that this amendment was strongly urged by the Secretary of the Treasury, then administering the World War Veterans' Act.[5] The 1918

---

[3] c. 105, 40 Stat. 398 (October, 1917).

[4] c. 77, 40 Stat. 555.

[5] House Report No. 471 from the Committee on Interstate and Foreign Commerce, 65th Cong., 2nd Session. A part of the letter of the Secretary of the Treasury contained in the Report was as follows: "The evils of the situation are pressing. Unscrupulous attorneys and claim agents are circularizing prospective claimants . . . The heartlessness and rapacity of these persons knows no bounds. In some instances their break-neck rush for employment has led them to the length of crucifying the wives and mothers of those in the service by false announcements that their husbands or sons have already fallen, and in almost all cases they are seeking to mulct the unwary out of hundreds of dollars for services that are either

amendment is substantially the same as § 500, and in a case involving the meaning of that amendment this Court said, "Petitioner claims that the inhibition against receiving any sum greater than three dollars [ten dollars under § 500] relates solely to the clerical work of filling out the form or affidavit of claim, and *does not apply to useful investigation and preparatory work such as he did. . . .*

"We find no reason which would justify disregard of the plain language of the section under consideration. It declares that any person who receives a fee or compensation in respect of a claim under the Act except as therein provided shall be deemed guilty of a misdemeanor. *The only compensation which it permits a claim agent or attorney to receive where no legal proceeding has been commenced is three dollars for assistance in preparation and execution of necessary papers.* And the history of the enactment indicates plainly enough that Congress did not fail to choose apt language to express its purpose." [6]   (Italics supplied.)

In 1926, Congress enacted additional legislation for the specific protection of incompetent veterans from illegal or excessive fees where guardians had been appointed by any court—state or federal.[7]   Congress declared that "whenever it appears that any guardian, curator, conservator or other person, in the opinion of the Administrator, is not properly executing or has not properly executed the duties of his trust or has collected or paid, or is attempting to collect or pay, fees, commissions or allowances that are inequitable or *in excess of those allowed by law for the duties performed . . .*, then and in

entirely unnecessary or would be amply remunerated by a nominal fee." The discussions of the amendment in the House by those in charge of the bill were of the same tenor. Congressional Record, Vol. 56, Part 5, 5220–5226.

[6] *Margolin v. United States,* 269 U. S. 93, 101, 102.

[7] c. 723, 44 Stat. 792; c. 10, 38 U. S. C. 450.

that event the Administrator is hereby empowered by his duly authorized attorney to appear *in the court which has appointed such fiduciary, . . .* and make proper presentation of such matters. . . ." [8]  (Italics supplied.)

The history of § 500 manifests beyond doubt the clear establishment of a public policy against the payment of fees for prosecution of veterans' claims in excess of those fixed by statute.  Collection of a greater fee than that fixed in the statute is made a crime, and this Court has sustained a conviction under the statute.[9]  Contracts for the collection of fees in excess of valid statutory limitations and for services validly prohibited by statute cannot stand, whether made with a competent veteran or the guardian of an incompetent veteran.  Nor can any court having jurisdiction over an incompetent award a fee in violation of a valid statute.  Congress clearly intended to protect all veterans, competent and incompetent, in all courts, state and federal, against the imposition or payment of fees in excess of the amount fixed by statute.  In furtherance of this policy the Administrator of Veterans' Affairs was charged with the express duty of appearing in all courts where it appears that "any guardian . . . or other person . . . is attempting to collect fees . . . in excess of those allowed by law."  The progressive strengthening of this particular legislative policy precludes any probability that Congress intended to exempt mental incompetents from its protection, and Congress alone is vested with constitutional power to determine the wisdom of this policy.

[8] In 1935, Congress added the proviso that " . . . the Administrator is hereby authorized and empowered to appear or intervene by his duly authorized attorney in any court as an interested party in any litigation instituted by himself or otherwise, directly affecting money paid to such fiduciary [guardian] under this section." c. 510, 49 Stat. 607, 608.

[9] *Margolin* v. *United States, supra.*

Congressional enactments in pursuance of constitutional authority are the supreme law of the land. Section 500 is a valid exercise of congressional power.[10] "The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are." [11]

No court has rendered a judgment or decree in favor of the incompetent veteran and against the Government, in which the court as a part of its decree determined and allowed a reasonable fee for the attorney of the veteran. In the absence of such a judgment and decree an attorney's fee of more than $10 is contrary to the controlling congressional enactment. The judgment below being for more than this amount is unauthorized and the cause is

*Reversed.*

[10] *Margolin* v. *United States, supra; Calhoun* v. *Massie,* 253 U. S. 170.

[11] *Claflin* v. *Houseman,* 93 U. S. 130, 136.