Howell *v.* Shores.

4-8670                                          215 S. W. 2d 730

Opinion delivered December 20, 1948.

*Ralph Robinson* and *Howell & Howell,* for appellant.

*Heartsill Ragon* and *Paul E. Gutensohn,* for appellee.

Wine, J. The appellee, Harley Shores, while employed as an "Extra-Gang" laborer by the Missouri Pacific Railroad Company, was, on December 19, 1943, severely injured as a result of being struck by a piece of ice thrown or otherwise dislodged from a passing troop train. The appellant, D. H. Howell, a practicing attorney of Van Buren, Arkansas, was employed by the appellee to file suit against the Missouri Pacific Railroad

Company to recover compensation for the injuries thus sustained.

The appellant and appellee entered into what appellant terms "the usual personal injury contract whereby (Howell) was to receive 50 per cent of the amount recovered for his services in prosecuting said lawsuit." After some preliminary investigation and during the trial of this suit in the Circuit Court of Crawford County, it developed that the train from which the ice was thrown or dislodged was a troop train in charge of a troop train commander over which the railroad company exercised no authority, thus suggesting two potential defendants: The Missouri Pacific Railroad Company and the United States Government.

Notwithstanding this development of facts, judgment was recovered for the appellee against the Missouri Pacific Railroad Company in the sum of $4,000. On appeal to this Court the judgment of the trial court was reversed and the case dismissed. 209 Ark. 539, 191 S. W. 2d 580.

Thereafter in pursuance of appellee's instructions, the appellant procured the passage of a special act of Congress for the relief of the appellee in which the Secretary of the Treasury was authorized and directed to pay to the appellee the sum of $4,000, said Act being styled and numbered "Private Law 95 of the 80th Congress of the United States, being an Act for the relief of Harley Shores." After providing for the payment of the $4,000 aforesaid, said Act further provided:

"That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of service rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000. Approved July 30, 1947."

The voucher in payment of the $4,000 authorized by the Act of Congress was mailed to the appellee in care of the appellant who accompanied the appellee to the

bank for the purpose of cashing said voucher after both had endorsed the same. Appellee deposited $1,900 to his own credit and returned to appellant's office with $2,100 where appellee paid appellant a fee of $400 as provided in said Act, appellant giving appellee his receipt therefor. A conversation then ensued relative to the services rendered by appellant in prosecuting the case against the Missouri Pacific Railroad Company.

At appellant's direction, appellee paid appellant an additional fee of $1,600, taking another receipt from appellant for this additional fee. Some four or five days later appellee returned to appellant's office complaining that appellant had "mistreated" him in that the first $400 was all that appellant was "to get" and that unless appellant made some adjustment appellee was going to prosecute appellant. After an exchange of words, appellant's son and law partner, Travis Howell, interceded, saying in substance that if appellee carried out his threat "it would not be good for our law firm to get mixed up in something like this, to have it before the people would be a reflection on our firm . . . it would be too much to go through a lawsuit with the government." As a result of this controversy, appellant paid appellee $500 in cash, took up and destroyed the receipt for $1,600. This left appellant with an aggregate fee of $1,500.

A few days later appellee addressed appellant by letter making further demand for an additional $500. On November 6, 1947, appellant filed suit against the appellee in the Crawford Circuit Court alleging and setting forth in his complaint his services rendered in behalf of appellee and praying judgment "in the sum of $2,000, or in such sums as the court may find the value of his services rendered to be, together with all his costs therein laid out and expended," and on the same date caused a "Writ of Garnishment" to be issued garnishing the $1,900 deposited by the appellee to his own credit in the Peoples Bank & Trust Company of Van Buren from the proceeds of the government voucher.

Appellee filed his answer and cross-complaint setting forth what had transpired between the parties and

payments made to appellant, alleging that the $1,500 attorney's fee theretofore paid by him to appellant was beyond the legal limit allowed and allowable by the Act of Congress and praying judgment against the appellant for the $1,100 paid in excess of the $400 allowed by the Act of Congress and that the garnishment proceedings be immediately quashed.

Appellant then filed an amendment to his complaint alleging that the original "Personal Injury Contract" whereby the plaintiff (Howell) was to receive 50 per cent of the amount recovered for his services . . . "had been abrogated at the time it was determined that the block of ice which struck appellee was thrown or otherwise dislodged from a troop train; that it might be necessary to seek relief from the United States government; that a new oral contract was entered into under the terms of which appellee was to pay appellant a 'reasonable' fee for his services in prosecuting the suit against the Missouri Pacific Railroad Company and praying judgment against the appellee and the garnishee in the sum of $500."

On the tenth day of March, 1948, this cause came on to be heard in the Crawford Circuit Court and at the conclusion of the evidence introduced by appellant and upon motion of the appellee, the trial court instructed and the jury found:

"We, the jury, find for the defendant, Harley Shores, on plaintiff's complaint and on plaintiff's amended complaint, and for the defendant (Shores) against plaintiff (Howell) in the sum of $1,100 on defendant's (Shores) cross-complaint. Sam Whitson, Foreman."

And from this judgment comes this appeal.

Appellant offered testimony of other attorneys as to the value of the services rendered. But this is not important for a determination of this case for reasons hereinafter stated. Nor is it important for a determination of this case to discuss any portion of appellant's motion for a new trial except Assignments 4 and 5 thereof which read as follows:

## IV.

"That the court erred in withdrawing from the jury's consideration plaintiff's cause of action as stated in his complaint and amended complaint and in instructing a verdict thereon for the defendant."

## V.

"That the court erred in withdrawing from the jury's consideration defendant's cross-complaint and in instructing a verdict thereon for the defendant."

The appellant is in error in these assignments.

It is undisputed that the only monetary recovery and benefits inuring to the appellee were the proceeds of the government voucher paid in obedience to and in compliance with the special act of Congress, nor is it disputed that the funds garnished and sought to be recovered by appellant were a part of the proceeds of said voucher paid as provided by said Act of Congress, which act as aforesaid limited to 10 per cent of the aggregate $4,000 that should be "received by any agent or attorney on account of services rendered in connection with this claim . . . *any contract to the contrary notwithstanding.*" (Italics supplied.)

Even if the original contract of employment had been abrogated and a new oral contract entered into for a "reasonable" fee, as contended by appellant, the trial court was amply justified and eminently correct in instructing a verdict in favor of the appellee.

This would be true even though the employment contracts were entered into prior to the passage of the Act of Congress. In the case of *Calhoun* v. *Massie,* 253 U. S. 170, 40 S. Ct. 474, 64 L. Ed. 843, Mr. Justice BRANDEIS, speaking for the Court had this to say: "An act limiting the compensation of attorneys in the prosecution of claims, against the government is valid also as to contracts which had been entered into before its passage was expressly held in *Ball* v. *Halsell,* 161 U. S. 72, 16 S. Ct. 554, 40 L. Ed. 622. The act there in question was passed seventeen years after the date of the contract,

and the attorney had performed important services before its enactment. Here, it is said, substantially all the services required of Calhoun had been performed when the act was passed. The difference in the percentage of services performed cannot here effect the legal result.''

Appellant's fee must be held to be limited to the terms and restrictions contained in the special act of Congress. Even though if considered on a *quantum meruit* basis, such services would appear to be of greater value.

In the case of *Brown* v. *Gesselschaft,* 70 D. C. App. 94, 104 Fed. 2d 227, Mr. Justice MILLER, speaking for the United States Court of Appeals, for the District of Columbia, said: ''The policy of the law which prohibits contingent fees for services rendered in securing 'favor legislation' is not concerned with the moral or ethical standards of clients served. The purpose of the law is to prevent improper pressures upon legislative action. The fact that a client may be one . . . to take advantage of his agent, certainly constitutes no reason for permitting his agent to take advantage of the government. This is particularly true in the present case. Justice, although perhaps a blind goddess, cannot overlook the fact that the appellant is a lawyer, an officer of the court, charged with knowledge of the law.''

And a headnote from the same case reads:

''An attorney who was denied recovery against foreign corporation on contingent fee contract whereby attorney agreed to enforce corporation's rights against federal government, on ground that contract was void as against public policy, was not entitled to recover against corporation on *quantum meruit.*'' See, also, headnote in the case of *Nesbit* v. *Frederick Snare Corporation,* 68 D. C. App. 263, 96 Fed. 2d 535:

''Where act, appropriating money in settlement of claim against United States, provided that it should be unlawful for any attorney to receive any sum of money appropriated in excess of 10 per cent, only 10 per cent of amount appropriated in settlement of claim could be

recovered as attorney's fees, notwithstanding claimant's contract with attorney provided for 50 per cent contingent fee and notwithstanding claimant had sufficient funds, aside from amount received in settlement of claim, with which to pay full amount of the contingent fee.''

The holding in the foregoing case is most favorable to the appellee, for in the case before us the funds sought to be recovered and garnished by appellant *were a part of the funds received from the government in settlement of the claim.*

For further authority for our holdings thus far see, also, *Smith* v. *United States,* 83 Fed. 2d 631; *Hines* v. *Stein,* 298 U. S. 94, 56 S. Ct. 699, 80 L. Ed. 1063; *Purvis* v. *United States,* 61 Fed. 2d 992; *Yeiser* v. *Dysart,* 267 U. S. 540, 45 S. Ct. 399, 69 L. Ed. 538; *Sutherland, et al.* v. *New York & Baltimore Transportation Lines,* 43 Fed. Supp. 94; *Hines* v. *Lowrey,* 305 U. S. 85, 59 S. Ct. 31, 83 L. Ed. 56; *Margolin* v. *United States,* 269 U. S. 93, 46 S. Ct. 64, 70 L. Ed. 176.

From this jurisdiction see the case of *Purvis* v. *Walls,* 184 Ark. 887, 44 S. W. 2d 353, 109 A. L. R. 434.

We are also of the opinion that the Writ of Garnishment should be dissolved and dismissed and damages assessed against the appellant in the proper amount, to-wit: interest computed at six per cent per annum on the $1,900 belonging to the appellee while it was wrongfully impounded.

The judgment of the trial court is affirmed.

The clerk of this Court is directed to include in the mandate our order dismissing the garnishment and allowing appellee damages for the wrongful issuance of the Writ of Garnishment at the rate of six per cent per annum on the item of $1,900 for the period covered by the garnishment.

It is so **ordered.**