CALHOUN v. MASSIE.

CERTIORARI TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 294.   Argued March 11, 1920.—Decided May 17, 1920.

An agreement that the fee of an attorney for successfully prosecuting a claim against the United States shall be a lien upon any warrant that may be issued in payment of the claim is void under Rev. Stats., § 3477. P. 175.

Section 4 of the Omnibus Claims Act of March 4, 1915, c. 140, 38 Stat. 962, in its limitation of the amount that may be paid to or received by an attorney on account of services rendered or advances made in connection with any claim for which the act made appropriation, does not refer merely to the specific funds received from the Government, but makes payment or receipt in excess of the limitation unlawful whatever the source. Id.

This broader prohibition is within the power of Congress as applied

to a contract made and substantially performed by the attorney, before Congress and in the Court of Claims, before the act was passed but respecting a claim as to which no right of recovery existed under any act of Congress when the contract was made and which depended for its recognition on the action of Congress in making an appropriation. P. 175.

In such a case, the attorney's contract being to secure the appropriation, the passage of the appropriation is a condition precedent to his client's liability to him, and, Congress having power to condition such appropriations and having been accustomed so to limit attorney's fees, such a limitation may be taken to have been within the contemplation of the parties and impliedly assented to by the attorney in making his contract. P. 176.

Where an attorney for a claimant receives the full amount allowed him out of the specific fund appropriated under an act which limits his fee to that amount any contract to the contrary notwithstanding, he takes under the act and can not repudiate its provisions, and any verbal reservation of his rights under the contract is futile. P. 177.

123 Virginia, 673, affirmed.

THE case is stated in the opinion.

*Mr. Charles F. Consaul*, with whom *Mr. J. C. Brooke* was on the briefs, for petitioner.

*Mr. James R. Caskie*, with whom *Mr. Fred Harper* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The Omnibus Claims Act (March 4, 1915, c. 140, 38 Stat. 962), made appropriations for the payment of 1,115 claims arising out of the Civil War which had, from time to time during the preceding twenty-eight years, been referred by resolution of the House or of the Senate to the Court of Claims for investigation, either under the Bowman Act (March 3, 1883, c. 116, 22 Stat. 485), or under the Tucker Act (March 3, 1887, c. 359, 24 Stat.

505), or under § 151 of the Judicial Code. Among the claims which that court reported favorably was one of Bland Massie, which had been referred to it by resolution of the House on February 3, 1911.[1] By section 1 of the Omnibus Claims Act (p. 989), the Secretary of the Treasury was directed to pay Massie $1,900. Section 4 of the act (p. 996), provided as follows:

"That no part of the amount of any item appropriated in this bill in excess of twenty percentum thereof shall be paid or delivered to or received by any agent or agents, attorney or attorneys on account of services rendered or advances made in connection with said claim.

"It shall be unlawful for any agent or agents, attorney or attorneys to exact, collect, withhold or receive any sum which in the aggregate exceeds twenty percentum of the amount of any item appropriated in this bill on account of services rendered or advances made in connection with said claim, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding $1,000."

Massie had executed on April 18, 1911, an agreement as follows:

"Fee Agreement. This Agreement, witnesseth: that I, Bland Massie, of Tyro, Nelson County, Virginia, have employed C. C. Calhoun, of Washington, D. C., as my attorney to prosecute my claim against the Government of the United States for property taken by the Federal forces during the late Civil War, and in consideration of his professional services in the prosecution of said claim I hereby agree and bind my heirs and legal representatives, to pay him, his heirs or legal representatives as a fee a sum equal to 50 per cent. of the amount which may

---

[1] 63d Cong., 2d sess., House Report No. 97; Senate Report No. 357; 63d Cong., 1st sess., House Doc. 64.

be collected upon said claim, said fee to be a lien on any warrant which may be issued in payment of said claim."

Calhoun prosecuted Massie's claim before the Court of Claims and secured the allowance of a motion to transmit its report to Congress, which thereafter made the appropriation above stated. On May 5, 1915, the Government paid the $1,900 by means of two Treasury warrants, one for $380 (twenty per cent. thereof) made payable to Calhoun, the other for $1,520 (eighty per cent. thereof) made payable to Massie. Calhoun demanded of Massie a further sum of $570, equal to thirty per cent. of the claim. Payment was refused; and he brought this suit in a state court of Virginia to recover the amount, claiming that the warrant for twenty per cent. had been accepted by him without waiving or releasing his right under the contract to the balance. A declaration setting forth in substance the above facts was demurred to on the ground that recovery was prohibited by § 4 of the act under which the appropriation was made. The demurrer was sustained and judgment entered thereon was affirmed by the Supreme Court of Appeals of the State of Virginia (123 Virginia, 673). The case comes here on writ of certiorari (249 U. S. 596), Calhoun having contended in both lower courts, as here, that § 4 deprives him of liberty and property guaranteed by the Fifth Amendment to the Federal Constitution and hence is void.

For nearly three-quarters of a century Congress has undertaken to control in some measure the conditions under which claims against the Government may be prosecuted. Its purpose has been in part to protect just claimants from extortion or improvident bargains and in part to protect the Treasury from frauds and imposition. See *United States* v. *Van Leuven,* 62 Fed. Rep. 52, 56. While recognizing the common need for the services of agents and attorneys in the presentation of such claims and that parties would often be denied the opportunity

of securing such services if contingent fees were prohibited, *Taylor* v. *Bemiss*, 110 U. S. 42, 45, Congress has manifested its belief that the causes which gave rise to laws against champerty and maintenance are persistent. By the enactment, from time to time, of laws prohibiting the assignment of claims and placing limitations upon the fees properly chargeable for services [1] Congress has sought both to prevent the stirring up of unjust claims against the Government and to reduce the temptation to adopt improper methods of prosecution which contracts for large fees contingent upon success have sometimes been supposed to encourage. The constitutionality of such legislation, although resembling in its nature the exercise of the police power, has long been settled (*Marshall* v. *Baltimore & Ohio R. R. Co.*, 16 How. 314, 336; *United*

---

[1] Assignment of claims against the United States: Acts of July 29, 1846, c. 66, 9 Stat. 41; February 26, 1853, c. 81, § 1, 10 Stat. 170; Rev. Stats., § 3477. Repayment of moneys collected by direct tax: March 2, 1891, c. 496, § 3, 26 Stat. 822. Indian Depredation Claims: Act of March 3, 1891, c. 538, § 9, 26 Stat. 851, 854. Pensions: Rev. Stats., § 4785 (Act of July 8, 1870, c. 225, § 7, 16 Stat. 193, 194, as amended by Act of July 4, 1884, c. 181, § 4, 23 Stat. 98, 99); Rev. Stats., § 5485 (Act of March 3, 1873, c. 234, §§ 31, 32, 17 Stat. 566, 575); Rev. Stats., § 4711 (Act of March 3, 1873, c. 234, § 17, 17 Stat. 566, 572); Act of January 25, 1879, c. 23, § 4, 20 Stat. 265; Acts of June 27, 1890, c. 634, § 4, 26 Stat. 182, 183; March 3, 1891, c. 542, 26 Stat. 948, 979; March 3, 1891, c. 548, 26 Stat. 1081, 1082; August 5, 1892, c. 379, § 2, 27 Stat. 348, 349; February 28, 1903, c. 858, § 3, 32 Stat. 920, 921; April 19, 1908, c. 147, § 3, 35 Stat. 64; May 28, 1908, c. 208, 35 Stat. 418, 419; September 8, 1916, c. 470, § 4, 39 Stat. 844, 845; Act of July 16, 1918, c. 153, § 2, 40 Stat. 903, 904. Pay and bounty of colored soldiers: Act of March 3, 1879, c. 182, § 2, 20 Stat. 377, 402. Arrears of pay or allowances in connection with services in the Civil War: Act of December 22, 1911, c. 6, 37 Stat. 47, 49. Mississippi Choctaws: Act of May 31, 1900, c. 598, 31 Stat. 221, 237. Services for Indians: Rev. Stats., § 2104; Act of June 30, 1913, c. 4, § 17, 38 Stat. 77, 95; Act of August 1, 1914, c. 222, § 17, 38 Stat. 582, 599. Claims under War Risk Insurance Act: Act of June 12, 1917, c. 26, § 8, 40 Stat. 102, 104.

*States* v. *Hall,* 98 U. S. 343, 354, 355; *Ball* v. *Halsell,* 161 U. S. 72, 82, 84).

The provision in the contract sued on purporting to give a lien upon any warrant issued was void under § 3477 of the Revised Statutes, *Nutt* v. *Knut,* 200 U. S. 12, 20. It is urged that the act here in question should be construed as limiting only the proportion of the specific funds received from the Government which may be applied to payment of attorneys' fees; but the second paragraph of the law leaves no room for construction. It provides that: "It shall be unlawful for any . . . attorney . . . to . . . receive any sum which in the *aggregate* exceeds twenty per centum " of the claim. Calhoun contends, however, that if the act is construed as limiting the amount recoverable from a claimant upon his personal obligation, it is void as applied to contracts in existence at the time of its passage; at least where, as here, the services contemplated had then been substantially performed.

That an act limiting the compensation of attorneys in the prosecution of claims against the Government is valid also as to contracts which had been entered into before its passage was expressly held in *Ball* v. *Halsell, supra.* The act there in question was passed seventeen years after the date of the contract, and the attorney had performed important services before its enactment. Here, it is said, substantially all the services required of Calhoun had been performed when the act was passed. The difference in the percentage of services performed cannot here affect the legal result. An appropriate exercise by a State of its police power is consistent with the Fourteenth Amendment, although it results in serious depreciation of property values; and the United States may, consistently with the Fifth Amendment, impose for a permitted purpose, restrictions upon property which produce like results. *Lottery Case,* 188 U. S. 321, 357; *Hipolite Egg Co.* v. *United States,* 220 U. S. 45, 58; *Hoke* v. *United*

*States,* 227 U. S. 308, 323; *Hamilton* v. *Kentucky Distilleries & Warehouse Co.,* 251 U. S. 146. The sovereign right of the Government is not less because the property affected happens to be a contract. *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467, 484; *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U. S. 372. Here, unlike *New York Central & Hudson River R. R. Co.* v. *Gray,* 239 U. S. 583, 587, a performance of a substitute for the obligation undertaken and later prohibited by the statute is impossible, because the act forbids the collection or receipt of any compensation in excess of twenty per cent.

In the case at bar there are special reasons why the contract cannot prevail over the statute enacted later. At the time when the contract was entered into there was no legislation general or special which conferred upon Massie any right of recovery even if he should establish to the satisfaction of Congress that his claim was equitable. A statute making an appropriation to pay the claim was thus a condition precedent to liability on the part of Massie to Calhoun; and the thing contracted for was Calhoun's aid in securing its enactment. The aid was to be given by representing Massie before the Court of Claims. But both of the parties knew that, although Calhoun might have success before the Court of Claims, Congress would still be free to refuse both to recognize the claim as an equitable one and to make an appropriation for its payment. They also knew that if it concluded to grant relief, Congress was free to do so upon such conditions as it deemed proper. Compare *Ball* v. *Halsell,* *supra,* pp. 82, 84; *Kendall* v. *United States,* 7 Wall. 113, 117. In view of the past action of Congress limiting attorneys' fees, referred to above, it was at least conceivable when the contract was made that Congress might, as it proved,[1] be unwilling to enact any legislation without assuring itself that the benefits thereof would not inure

---

[1] See 51 Cong. Rec., p. 324; 52 Cong. Rec., pp. 5289, 5316.

largely to others than those named in the act. Assent by Calhoun to the insertion in the act of a condition such as this, which he might reasonably have contemplated would be required to ensure its passage, was, therefore, implied in the contract to aid in securing the legislation. Compare *The Kronprinzessin Cecilie*, 244 U. S. 12, 22-23.

Furthermore, Calhoun accepted and received from the Treasury a warrant for twenty per cent. of the sum appropriated. The money was paid and it was received under the act which provided that it was unlawful to collect any sum in excess of twenty per cent. "any contract to the contrary notwithstanding." Calhoun cannot take under the act and repudiate its provisions. Compare *Shepard* v. *Barron*, 194 U. S. 553, 567; *Grand Rapids & Indiana Ry. Co.* v. *Osborn*, 193 U. S. 17, 29; *Interstate Consolidated Street Ry. Co.* v. *Massachusetts*, 207 U. S. 79. The allegation in the declaration that he accepted the twenty per cent. "without waiving or releasing any of his rights under the aforesaid contract" was doubtless intended as a statement that the amount collected from the Government was not accepted as a full settlement of his rights against the defendant under the contract. But it was a protestation totally at variance with his conduct. The payment to him by the Treasury of the twenty per cent. could be made only under the act. It must be held to have been accepted according to the terms of the act. Any reservation which he may have made in words was futile. *Capital Trust Co.* v. *Calhoun*, 250 U. S. 208, 218, 219.

*Affirmed.*

Mr. Justice McReynolds, with whom concurred Mr. Justice McKenna, Mr. Justice Van Devanter and Mr. Justice Pitney, dissenting.

In 1911 Calhoun made a lawful agreement with Massie to prosecute the latter's claim against the United States

for property taken during the Civil War (*Taylor* v. *Bemiss*, 110 U. S. 42); and Massie expressly bound himself to pay, as a fee for such services, "a sum equal to 50 per cent. of the amount which may be collected,  .  .  .   said fee to be a lien on any warrant," etc.

Calhoun performed his full part in strict accordance with the contract.  As a result of his proper efforts, Congress finally approved the claim and appropriated $1,900 to pay it (Act March 4, 1915, c. 140, 38 Stat. 962, 989).

But the same act, § 4 (p. 996), provided that not more than twenty per cent. of the amount appropriated should be paid, or delivered to, or received by, any attorney for services, etc.  Also "It shall be unlawful for any agent or agents, attorney or attorneys to exact, collect, withhold or receive any sum which in the aggregate exceeds twenty per centum of the amount of any item appropriated in this bill on account of services rendered or advances made in connection with said claim, any contract to the contrary notwithstanding.  Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding $1,000."

*Capital Trust Co.* v. *Calhoun*, 250 U. S. 208, affirms the power of Congress to exempt the appropriated fund from any demand for counsel fees.

In that case Calhoun, relying upon a contract like the one presently before us, recovered a judgment in the state court for the difference between twenty per cent. received from the Treasury and fifty per cent. of the appropriation.  The matter came here and we expressly declared (p. 216): "If the judgment only establishes a claim against the administrator to be satisfied, not out of the moneys received from the United States but from other assets of the estate, a situation is presented which it was said in *Nutt* v. *Knut*, 200 U. S. 12, 21, would not encounter legal objection.  In other words, the limitation

in the act appropriating the money to 20% as the amount to be paid to an agent or attorney would have no application or be involved." In effect, the court now holds that statement was obviously erroneous; and that Calhoun would have committed a misdemeanor if he had accepted a fee exceeding the twenty per cent!

*As to certain "special reasons why the contract cannot prevail over the statute enacted later."*

(1) It is said that when he executed the contract of employment, Calhoun impliedly assented to the insertion in any future appropriation act of a condition like the one under consideration; therefore, he cannot recover. This assumes, first, a construction of the act in direct conflict with the meaning heretofore attributed to it and, second, that so construed it is within the power of Congress. If these two assumptions are correct, of course there is no right to recover. This special reason can only serve to mislead.

(2) It is further said that as Calhoun received twenty per cent. of the amount appropriated by an act which declared unlawful the collection of anything more, he thereby in effect estopped himself from making a personal demand against his client. But this again assumes a construction of the act contrary to what we have declared, and further assumes that so construed it is valid. If these assumptions are correct no further discussion is needed. This special reason lacks substance and can serve no good purpose.

*The meaning of Section 4.*

Considering the definite statement concerning the true meaning of this section made twelve months ago in *Capital Trust Co.* v. *Calhoun*, 250 U. S. 208, and quoted above, it would seem at least unusual now to announce a wholly different view accompanied by the mere assertion that there is "no room for construction." No mention

is made of what was then said in very plain terms. Of course this has been accepted as authoritative both by lawyers and courts. The result is necessarily injurious both to the court and the public.

In *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 408, this was said: "Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." As that statement has been repeated several times it would seem worthy of some consideration now.

I presume nobody doubts that Congress has power to prescribe reasonable rules concerning champerty, maintenance or kindred matters in United States courts, and to regulate assignments of claims against the Government. But, under the adopted construction, § 4 (Act of March 4, 1915), destroys an entirely lawful contract made long before its passage, deprives counsel of his right to enforce the personal liability of his client to pay for services already performed, and renders criminal the acceptance by him of more than an arbitrarily specified amount.

*Marshall* v. *Baltimore & Ohio R. R. Co.*, 16 How. 314, 316; *United States* v. *Hall*, 98 U. S. 343, 354, 355; *Ball* v. *Halsell*, 161 U. S. 72, 84, are referred to as authority for such oppressive legislation. They give it no support.

*Marshall* v. *Baltimore & Ohio R. R. Co.*, was an attempt to collect compensation for lobbying; and the holding was that a contract is void, as against public policy, and can have no standing in court by which one party stipulates to employ a number of secret agents in order to obtain the passage of a particular law by the legislature of a State, and the other party promises to pay a large sum of money in case the law should pass. The case appears unimportant in connection with this controversy.

In *United States* v. *Hall* the court ruled, Congress has power to declare that embezzlement or fraudulent con-

version to his own use by a guardian of pension money received on behalf of his ward from the Government is an offense against the United States. This case might be relevant if Calhoun were seeking to reach the fund appropriated by Congress; but he is not.

In *Ball* v. *Halsell,* an attorney sought to recover under a written agreement, concerning which this court said (p. 82): "The instrument was an unilateral contract, not signed by the attorney, nor containing any agreement on his part, and—so long, at least, as it had not been carried into execution—might be revoked by the principal; or might be disregarded by him in making a settlement with the United States; or might be treated by him as absolutely null and void in any contest between him and the attorney. . . . By the very terms of the contract, the attorney was to be paid only out of money recovered and received by him from the United States." The case is wholly unlike the one now before us. Mr. Justice Gray took pains to explain the difference between it and *Davis* v. *Commonwealth,* 164 Massachusetts, 241, where the Massachusetts court ruled that an agent of the State employed to prosecute a claim against the United States could recover compensation notwithstanding the act of Congress appropriating money to meet the claim provided that no part of such sum should be paid by the State to any attorney under previous contract.

*Davis* v. *Commonwealth* and the language by Mr. Justice Gray in *Ball* v. *Halsell* wherein he pointed out the clear distinction between the two cases, ought not to be lightly disregarded.

It is certainly a very serious thing to decide that Congress, by its arbitrary fiat, may wholly deprive counsel of the right to enforce payment of compensation for long continued efforts theretofore lawfully put forth, and prevent him, indeed, from accepting anything therefor. If a limit may be set at twenty per cent. any payment may

be proscribed.   We should follow *Capital Trust Co. v. Calhoun,* and reverse the judgment below.

   The Fifth Amendment was intended to protect the individual against arbitrary exercise of federal power.   It declares, no person shall be deprived of life, liberty or property, without due process of law; and this inhibition protects every man in his right to engage in honest and useful work for compensation.   *Adair* v. *United States,* 208 U. S. 161; *Coppage* v. *Kansas,* 236 U. S. 1; *Adams* v. *Tanner,* 244 U. S. 590.

   MR. JUSTICE MCKENNA, MR. JUSTICE VAN DEVANTER and MR. JUSTICE PITNEY concur in this dissent.