ANTHONY ROMANO and Another, Plaintiffs, *v.* ROSE MAGLIULO and Another, Defendants.

Municipal Court of New York, Borough of Brooklyn, Eighth District, March 18, 1935.

*Max H. Frankel*, for the plaintiffs.

*F. N. Costerella*, for the defendants.

WASSERMAN, J.    This action is brought by the plaintiffs, who are attorneys at law carrying on business as partners, to recover the reasonable value of the services rendered by them to the defendants in connection with certain mortgage difficulties on the premises 185 Avenue P, Brooklyn.

Prior to the date on which those services were commenced, the defendants filed an application for a loan with the Home Owners' Loan Corporation, hereinafter referred to as the corporation.    At the trial of this action before me, neither party raised the question of the applicability of subdivision (e) of section 8 of the Home Owners' Loan Act of 1933, and I gave judgment for the plaintiffs for the sum of $200.

After the entry of judgment the defendants made the claim that since the services rendered herein by the plaintiffs were partially concerned with facilitating the loan by the corporation under the application filed by the defendants, the plaintiffs were barred from recovering for such services under said subdivision e of section 8 because the fees were not authorized and required by the corporation.

For the purpose of having a judicial determination of the rights of the parties under these circumstances, they have resubmitted the case to me under a stipulation and an agreed statement of facts, in addition to the evidence adduced at the trial.

From the agreed statement of facts it appears that the services rendered by the plaintiffs to the defendants may be divided into two parts:    *First*, the services rendered between the time of the filing of the application for loan with the corporation by defendants prior to February, 1934, and July, 1934, when the corporation agreed to make a loan of $8,400.    The services during this period consisted in extensive negotiations with the holders of the first and second mortgages and their attorneys to get a reduction in the rate of interest, to prevent foreclosure proceedings, to eliminate a receiver, and finally to induce them to accept the bonds of the corporation, if it made the loan.    In addition to these services a great deal of time was spent in trying to find someone to buy the first mortgage who would be willing to make more favorable terms. I find that these services were reasonably worth $150.

*Second*, the services rendered by the plaintiffs after the corporation agreed to make the loan of $8,400, which consisted in negotia-

tions to induce the holders of the mortgages to reduce the amount of their claims so as to bring them as nearly as possible within the amount that the corporation was willing to loan on the property. This service resulted in a saving to the defendants of approximately $1,200, and I find that the value of this service is $100.

Subdivision (e) of section 8 of the Home Owners' Loan Act (U. S. Code, tit. 12, § 1467, subd. [e]) is as follows: "No person, partnership, association, or corporation shall, directly or indirectly, solicit, contract for, charge or receive, or attempt to solicit, contract for, charge or receive any fee, charge, or other consideration from any person applying to the Corporation for a loan, whether bond or cash, except ordinary fees authorized and required by the Corporation for services actually rendered for examination and perfection of title, appraisal, and like necessary services. Any person, partnership, association, or corporation violating the provisions of this subsection shall, upon conviction thereof, be fined not more than $10,000 or imprisoned not more than five years or both."

The Home Owners' Loan Corporation resolutions, adopted by the board of directors, are as follows:

. "*Be it resolved* by the Board of Directors of Home Owners' Loan Corporation that the ordinary charges authorized and required by the Corporation for services actually rendered for examination and perfection of title, appraisal and like necessary services, shall consist of the following:

" (1) An appraisal fee for a professional appraisal of the property as approved by the Board of Directors.

" (2) A fee for a character report in a sum agreed upon by the State, District or Territorial Manager after consideration of bids.

" (3) Necessary recording and similar fees charged by public officials.

" (4) Necessary charges for perfecting title, as approved by the State Counsel of the Corporation, in a sum not exceeding $75 in any case, and larger necessary charges if approved by the Board of Directors.

" (5) Necessary and usual fees for abstracts, examination of title, examinations of abstracts, opinions on title, certificates of title or title insurance, as approved by the State, District or Territorial Counsel of the Corporation.

" (6) Charges of attorneys or title companies for escrow services or closing loans, as approved by the State Counsel.

" (7) Any other necessary charge for like necessary services, as specifically approved by the Board of Directors.

" *Be it further resolved* that ordinary and necessary charges made by agents, brokers, banks or other corporations or attorneys against

mortgagees for services rendered to them are not considered by Home Owners' Loan Corporation to be condemned by Home Owners' Loan Act of 1933. The corporation will not go forward with the refunding of indebtedness, however, in cases where mortgagees employ representatives upon representations that such representative is able to secure more or better service or treatment from the corporation than the mortgagee himself could receive or where charges made by such representative in any way, directly or indirectly, adversely affects any mortgagors involved." (H. O. L. C. Resolutions, Bulletin 48, Jan. 23, 1934.)

It should be noted that subdivision e of section 8 prohibits everybody from charging or receiving a fee " from any person applying to the Corporation for a loan." The inhibition is not confined to services rendered in connection with the application for a loan, but extends to all services rendered to a person applying for a loan. To hold that the statute prohibits any one from charging a person for any kind of service rendered to him as long as he has an application pending before the corporation would be absurd. It would be equally as absurd to hold that a person who has filed an application with the corporation cannot enter into a lawful contract for services in connection with the property on which he seeks a loan from the corporation.

The filing of an application for a loan with the corporation does not act as a stay against any proceedings by holders of mortgages or claims against the property. If an owner filing an application could not contract for services to hold off foreclosure proceedings or to minimize the expense of foreclosure by eliminating a receivership or to persuade holders of mortgages to consent to accept the bonds of the corporation, the application for a loan might become a mere futility. A reasonable construction of the statute does not bar the plaintiffs from recovering for their services rendered up to the time of the acceptance of the loan by the corporation, excepting perhaps for the filing of the application. There is no charge made for this service. In fact, the application was filed by the defendants without the aid of their attorneys.

We come now to the portion of the services rendered after the acceptance of the application. This service consisted in negotiations to induce the holders of the mortgages to reduce the amount of their claims and resulted in a saving to the defendants of about $1,200. The freedom of contract is guaranteed by the Fifth Amendment to the Constitution, which includes the right to engage in honest and useful work or profession for compensation. (*Adair* v. *United States*, 208 U. S. 161; *Coppage* v. *Kansas*, 236 id. 1; *Adams* v. *Tanner*, 244 id. 590.)

The power of Congress to limit or curtail those rights is confined to cases where a sound public policy requires the protection of certain classes of individuals or the funds appropriated by Congress for their use. This is why limitations on the amount to be charged by attorneys under the Pension Act of June 27, 1890 (26 U. S. Stat. at Large, 182), and under the Omnibus Claims Act of March 4, 1915 (38 U. S. Stat. at Large, 962), and the War Risk Insurance Act of June 12, 1917 (40 U. S. Stat. at Large, 398), have been sustained. (*Calhoun* v. *Massie*, 253 U. S. 170.)

The Home Owners' Loan Act makes no provision for the outright payment of money to any particular class. It simply provides a means for loaning money to home owners to an amount not exceeding eighty per cent of the appraised value and in no case more than $14,000 on any one parcel of property. The loan bears interest and has to be repaid within a definite period of time. The loans are not limited to those who are improvident or incapable of properly protecting their own interests. The benefits of this act are open to all those who, because of the financial emergency, are unable to amortize their debt elsewhere. Public policy, therefore, does not require that this class of citizens be protected against extortion or improvident bargains. Indeed, the type of person who owns his own home is usually well able to make contracts and to fully protect his rights. This is not a case, therefore, where Congress may interfere with the guaranties under the Fifth Amendment.

All of the services enumerated in subdivision e for which a fee as authorized by the corporation may be charged are being rendered by persons, lawyers or corporations, designated by the corporation. The borrower has no voice as to who should appraise the property or what lawyer or title company should examine the title or what lawyers should close the loan. The appraisers, the title examiners and the closers are all selected by the corporation and their fees are fixed by the corporation. Subdivision e is intended to protect the borrower and the corporation against this class. It is they who are prohibited from charging any greater fees than those fixed by the corporation. The temptation on the part of an appraiser to put a greater valuation on the property than is warranted in consideration of an extra fee, or on the part of a title examiner or closer to overlook certain defects in consideration of a larger fee, are the real dangers that this statute seeks to guard against. The act is not concerned with contracts made by the borrower with lawyers or other persons for services which are not connected with appraisals, examinations of title and closings. After a loan has been approved by the corporation, its only interest is to see that it

gets a first lien on the property to secure its loan. The amount of subsequent liens is no concern of the corporation, but is of vital concern to the borrower who is naturally anxious to reduce his obligations to a minimum. If a borrower can by engaging the services of a lawyer induce the mortgagees to reduce their claims so as to bring the aggregate indebtedness within the compass of the loan by the corporation, as was done in this case, he is doing something which aids in carrying out not only the letter but the spirit of the statute, and there is no good reason why he should not pay a reasonable fee for such service.

I see no reason, therefore, for changing my decision and judgment.