LAND, Justice.
 

 Andrew J. Wyly died at his domicile in the Town of Lake Providence, Parish of East Carroll, in this State on May 9, 1931, intestate, leaving, as his surviving widow, Mrs. Myrtis W. Wyly, and two children, issue of the marriage, Andrew Jackson Wyly, Jr., who was born June 28, 1924, and Annie Rose Wyly, who was born April 11, 1921.
 

 Decedent left an estate, consisting of community property and separate property, the total value of all the property appraised and inventoried being $17,958, and the interest of the minor Annie Rose Wyly being $9,029 and the interest of the minor Andrew Jackson Wyly, Jr., being $8,929.
 

 There were also inventoried the following items:
 

 
 *647
 
 “1. Amount due said minors, said Annie Rose Wyly and said Andrew Jackson Wyly, Jr., as beneficiaries, share and share alike, under Adjusted Service Certificate of their father, Andrew Jackson Wyly, issued by the United States in amount of ................................$996.00”
 

 “(2) Amount due said minors, said Annie Rose Wyly and said Andrew Jackson Wyly, Jr., as beneficiaries under United States Government Life Insurance, Policy K-388089 in the amount of Ten Thousand Dollars ($10,000.00) less‘amount of loan made to Andrew Jackson Wyly during his lifetime, exact amount of which is unknown.....................$9200.00.
 

 “Total $10196.00”
 

 After recording an abstract of the inventory in the Mortgage Book of East Carroll Parish, as required by law, Mrs. Myrtis W. Wyly was duly confirmed as Natural Tutrix of her minor children, and letters of Tutorship were issued to her, upon taking the prescribed oath of office.
 

 The paternal uncle of the minors, William G. Wyly, was appointed Under-tutor of the minors, and duly qualified as such. The Natural Tutrix and the Under-tutor were duly confirmed and appointed August 12, 1932.
 

 On October 20, 1933, the Natural Tutrix filed her first annual account and prayed for its homologation.
 

 This account shows that the full amount due the minors, under United States Government Life Insurance Policy K-388089 on the life of Andrew Jackson Wyly for $10,000, less amount of loan made to Andrew Jackson Wyly during his lifetime, was a balance of $9,274.95, which
 
 had been collected by the Natural Tutrix from the United States Government, on October 31,1932.
 
 Transcript p. 51.
 

 This account also shows that on November 4, 1932, the full amount due the minors of $996 under Adjusted Service Certificate of Andrew Jackson 'Wyly (bonus)
 
 had been paid by the United States Government.
 
 Transcript p. 51.
 

 The first annual account of the Natural Tutrix was served upon the Under-tutor, who admitted the correctness of same, and which was duly homologated by judgment of court October 21, 1933. Tr. p. 60.
 

 On October 20, 1936, or four years after the payment in full by the United States Government of these funds to the Natural Tutrix of these minors for their benefit, the Administrator of Veterans’ Affairs, proceeding under Section 21 (2) of the Act of Congress, known as the World War Veterans’ Act of 1924, as amended, U.S. C.A. Title 38, Section 450, filed a petition in the court below, praying that the Natural Tutrix be cited to appear and ordered to show cause why she should not furnish a fiduciary bond, and why she should not submit an accounting to date, showing all receipts, disbursements and all properties, real, personal and mixed pertaining to the estate derived from benefits received from the Veterans’ Administration in behalf of her wards. Transcript p. 62.
 

 
 *649
 
 In answer to the rule to show cause, the Natural Tutrix of the minors avers that she is not required under any law to furnish a bond in her capacity as Natural Tutrix herein, or to submit any accounting of any nature, kind or character to the Administrator of Veterans’ Affairs, and that the action taken by the Administrator herein is an attempted, unwarranted interference with respondent’s duties as Natural Tutrix of the minors, and constitutes an attempt to usurp the powers and functions of this court in this tutorship proceeding and to substitute the regulations of the United States Veterans’ Administration for the general laws of the State of Louisiana regulating a tutorship by nature and for the powers of this court in said tutorship. Transcript pages 66, 67, 68.
 

 The rule of the Administrator was dismissed by the trial judge, after hearing duly had. Transcript pages 78, 79.
 

 (1) The first question for decision is: Has the Administrator of Veterans’ Affairs the right to intervene in tutorship proceedings and to demand of a Natural Tutrix a bond covering funds already paid her. in full and administered by her subject to the supervision and control of a State Court?
 

 The Administrator of Veterans’ Affairs claims the right to intervene in these proceedings and demand bond of the Natural Tutrix, under and by virtue of the provisions of Title 2, Section 21(2) of the World War Veterans’ Act of June 7, 1924, as amended and re-enacted by the Act of August 12, 1935, the pertinent provisions of which read as follows: Title 38 U.S.C. A. § 450:
 

 “(1) Where any payment of compensation, adjusted compensation, pension, emergency officers’ retirement pay, or insurance under any Act administered by the Veterans’ Administration is to be made to a minor, other than a person in the military or naval forces of the United States, or to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to person who is constituted
 
 guardian, curator, or conservator by the laws of the State of residence of claimant,
 
 or is otherwise legally vested with the care of the claimant or of his estate. * * *
 

 “(2) Whenever it appears that any guardian, curator, conservator, or other person, in the opinion of the Administrator, is not properly executing or has not properly executed the duties of his trust or has collected or paid, or is attempting to collect or pay, fees, commissions, or allowances that are inequitable or in excess of those allowed by law for the duties performed or expenses incurred, or has failed to make such payments as may be necessary for the benefit of the ward or the dependents of the ward, then and in that event the Administrator is empowered by his duly authorized attorney to appear in the ’court which has appointed such fiduciary, or in any court having original, concurrent, or appellate jurisdiction over said cause, and make proper presentation of such matters: Provided, That the Administrator, in his discretion, may sus
 
 *651
 
 pend payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the Administrator from time to time showing the application of such payments for the benefit of such incompetent or minor beneficiary, or who shall neglect or refuse to administer the estate according to law: Provided further, That the Administrator is authorized and empowered to appear or intervene by his duly authorized attorney in any court as an interested party in any litigation instituted by himself or otherwise, directly affecting money paid to such fiduciary under this section.
 

 “Authority is granted for the payment of any court or other expenses incident to any investigation or court proceeding for the appointment of any guardian, curator, conservator, or other person legally vested with the care of the claimant or his estate or the removal of such fiduciary and appointment of another, and of expenses in connection with the administration of such estates by such fiduciaries, or in connection with any other court proceeding hereby authorized, when such payment is authorized by the Administrator.”
 

 Under the above quoted provisions of the Federal law, the Administrator of Veterans’ Affairs is specifically empowered
 
 to intervene
 
 in cases of the character of the present one, where in the opinion of the Administrator, the Tutrix or Guardian
 
 is not properly executing or has not properly executed his trust, etc.,
 
 and to make proper representation of such matters to the court having jurisdiction.
 

 However, beyond the right of intervention for the purpose of bringing the matters complained of to the court’s attention, the Administrator is, under the Federal Statute, vested with no power and control over the Guardian or guardianship proceedings ; except that in those cases where there are further payments due by the Government (which is not the case here) he is authorized in his discretion to suspend such payments until the Tutrix or Guardian has met with his requirements.
 

 All then that the Administrator is empowered to do in cases like the present one, is to intervene and make known his complaint. Disposition of the subject matter of the complaint is left solely to the State Court having jurisdiction of the proceedings.
 

 The Supreme Court of the United States placed just this interpretation on the provision in question in the case of Frank T. Hines, Administrator, etc., v. Minnie Stein, Guardian, etc., 298 U.S. 94, 56 S.Ct. 699, 80 L.Ed. 1063, wherein the Court said at page 1065, 56 S.Ct. at page 701, of the opinion:
 

 “It is true that the provisions cited place general restrictions upon the' fees of attorneys in connection with pension matters and prescribe the method of payment. But we find nothing in any of these acts of Congress which definitely undertakes to put limitation upon state courts in respect of guardians or to permit any executive officer, by rule or otherwise, to disregard and set at naught orders by courts to guardians appointed by them. Conflict in respect • of such matters be
 
 *653
 
 tween state courts and the federal government, its officers or bureaus, would be unseemly, perhaps extremely unfortunate. And in the absence of compelling language, we cannot conclude that there was intention to create a situation where this probably would occur.
 

 “During many years, Congress has recognized the propriety, if not the necessity, of intrusting the custody and management of funds belonging to incompetent pensioners to fiduciaries appointed by state courts, without seeking to limit judicial power in respect of them. To the contrary, it has directed that whenever any guardian, curator, or conservator fails properly to execute his trust, etc., the Administrator may ‘appear in the court which has appointed * * * and make proper presentation of such matters.’ [July 2, 1926] Chapter 723, § 2, 44 Stat. 792; [August 12, 1935] amended by chapter 510, § 1, 49 Stat. 607, title 38, U.S.C.A. § 450. Authority of the state courts over guardians for incompetents is thus definitely recognized.
 
 The Administrator is expressly empowered to suspend further payments if the guardian is found to be acting improperly; so much is possible without conflict.
 

 "Nothing brought to our attention would justify the view that Congress intended to deprive state courts of their usual authority over fiduciaries, or to sanction the promulgation of rules to that end by executive officers or bureaus.
 
 [Italics ours.]
 

 “The broad purpose of regulations in respect of fees of those concerned with pension matters is to protect the United States and beneficiaries against extortion, imposition or fraud.
 

 “Calhoun v. Massie, 253 U.S. 170, 173, 40 S.Ct. 474, 64 L.Ed. 843, [845], Dangers of this character are not to be expected in connection with the orderly exercise of authority by state courts over appointees properly intrusted with pension funds. The purpose in view is for consideration when the true meaning of statute or rule is sought.”
 

 The provisions of the governing Federal Statute quoted in this opinion contain no requirements as to bond in such cases. These provisions merely provide that the payment of such insurance or compensation may be made “to the person who is constituted guardian, curator, or conservator by the laws of the State of residence of claimant, or is otherwise legally vested with the care of the claimant or his estate.”
 

 It appears from the record in this case that the fiduciary here is a Natural Tutrix, the mother of the minors, and that her appointment was made under the general laws of this State, which do not require the furnishing of bond.
 

 Article 251 of the Revised Civil Code provides that: “Tutors by nature are bound to cause an inventory to be made, and an undertutor to be appointed,
 
 but they are not compelled to give security.
 
 They are required to give a special mortgage, or to cause the' legal mortgage in favor of the minor to be inscribed in the manner hereafter provided.” See R.C.G. Art. 321.
 

 
 *655
 
 Article 318 of the Revised Civil Code also provides that: “Every tutor, except the father and mother; and the tutor appointed according to the provisions of Article 271, shall give good and sufficient security for the fidelity of his administration.”
 

 If the trial judge had exacted the fiduciary bond of the Natural Tutrix demanded by the Administrator of Veterans’ Affairs, the surety would not have been bound. Aucoin v. Guillot, 10 La.Ann. 124, 125.
 

 Mr. Chief Justice Slidell, as the organ of the court in that case, said:
 

 “The defendant is surety in an official bond given in favor of the District Judge
 
 by a father and natural tutor,
 
 conditioned for the faithful administration of his trust. The Judge had no lawful authority to require such bond from the father, and therefore the court below correctly held the bond invalid. The maxim that as a man consents to bind himself so shall he be bound is not fairly applicable to such a judicial bond, which is not in legal contemplation purely voluntary, but .is required by the Judge from the parties as the condition for the exercise of a function. If he be entitled to such exercise without bond, its judicial ex parte exaction is illegal, and the bond must therefore justly be deemed inoperative against the surety.”
 

 In other words, the fixed public policy of this State is that a bónd-cannot be exacted of a natural tutor for the faithful administration of the trust, when appointed under the general laws of the State. Nor can such bond be exacted under the provisions of Title 2, Section 21(2) of the World War Veterans’ Act of June 7, 1924, as amended and re-enacted, by the Act of August 12, 1935, 38 U.S.C.A. § 450.
 

 Nor do we find any compelling language in the Uniform Veterans’ Guardianship Act, Act 71 of 1932, of this State, that gives to the Administrator of Veterans’ Affairs the right to intervene in tutorship proceedings and to demand of a Natural Tutrix, appointed under the general laws of the State, a bond conditioned for the faithful administration of the trust,
 
 after the benefits have been paid in full.
 

 Section 2 of Act 71 of 1932 specifically provides:
 

 “That whenever pursuant to any law of the United States or regulation of the Veterans Administration,
 
 the Administrator requires, prior to payment 'of benefits,
 
 that a tutor or curator be appointed for a ward, such áppointment shall be made in the manner hereinafter provided.”
 

 Section 8 of this Act also provides that “Upon the appointment being made the tutor or curator shall execute and file a bond to be approved by the court
 
 in an amount not less than .the sum then due and estimated to become payable during the ensuing year.
 
 The court shall have power from time to time to require the tutor or curator to file an additional bond.”
 

 But the Administrator did not proceed in this case, under Section 2, of the Act,
 
 *657
 
 to have a tutor appointed,
 
 "prior to payment of benefits,”
 
 but made these payments
 
 in full
 
 without asking either for appointment of tutor or for bond; and waited' for four years, after payment of all benefits to the minors, and after the investment of the funds of the minors, before proceeding in this case, against the Natural Tutrix of the minors, who had been appointed and qualified under the general laws of the State.
 

 The Government and its beneficiaries are fully protected by the State Act. If,
 
 "prior to payment of benefits,”
 
 the Administrator of Veterans' Affairs has a tutor appointed for the minors of the deceased veteran, and the tutor fails or refuses to execute the bond required by the Act, the Government may decline to pay the benefits to the tutor. But, clearly, a compliance with the plain terms of the Act by the Administrator is a prerequisite to the exercises of his right, either to demand the bond or the accounting from Tutrix, as provided for in the Act.
 

 Besides, it is stated in the opinion of the trial Judge that “The evidence herein and the knowledge of the Court, of matters relating to the handling of the affairs of these minors induces the assumption that not the remotest cause for suspicion exists as to any misconduct or bad management of their property.” See Opinion, Transcript p. 79.
 

 Judgment affirmed.
 

 O’NIELL, C. J., does not take part.