## SUTHERLAND et al. v. NEW YORK & BALTIMORE TRANSPORTATION LINES.

District Court, S. D. New York.
June 24, 1941.

Choate, Larocque, Mitchell & Ely, of New York City (Joseph Larocque and Clarence V. S. Mitchell, both of New York City, of counsel), for plaintiffs.

George M. Clarke, of New York City (Charles Markell, of Baltimore, Md., of counsel), for defendant.

KNOX, District Judge.

Plaintiffs move, pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, for summary judgment in their favor upon each of the two claims set forth in their complaint. By cross-motion, defendant seeks similar relief as respects the first claim and stands mute as to the second.

In the first cause of action, plaintiffs allege that, on January 23, 1936, defendant retained them to perform legal services in its behalf, in the way of prosecuting and collecting of a claim that defendant asserted against the United States. For work thus to be done, defendant agreed to pay plaintiffs, as compensation, a sum equal in amount to 33⅓ per cent of any moneys that might be recovered from the Government.

Plaintiffs fully performed their part of the contract, and as a result of their efforts, defendant recovered $129,000, in satisfaction of its claim. Defendant paid $12,900 to each of the plaintiffs instead of the contractual amount of $43,000, and plaintiffs here seek an additional $17,200 as allegedly due them under the terms of their retainer.

In its answer, defendant sets up the defense of illegality, saying that the Act of Congress May 18, 1938, c. 252, 52 Stat. 1315, appropriating said sum of $129,000 to defendant, makes it unlawful for the defendant to pay further money to plaintiff. The Act is as follows:

"An Act For the Relief of the New York and Baltimore Transportation Line, Incorporated.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury be, and he is hereby, authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to the New York and Baltimore Transportation Line, Incorporated, a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in New York City, the sum of $129,-000 in full satisfaction of its claim against the United States for damages arising out of the frustration of a certain contract of sale for its vessel, The Baltimorean, resulting from the requisition by the United States Government for public use of two other vessels, the Chesapeake and the Manna Hatta, both the property of the said New York and Baltimore Transportation Line, Incorporated: Provided, That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000."

Plaintiffs contend that the legislation does not prohibit defendant from satisfying its obligation to them from its other and independent assets. Defendant argues

that the provisions of the statute having to do with compensation is a Congressional pronouncement of public policy, and that any further payment, from whatever source derived, would be unlawful.

In my opinion, the contention of the defendant must be sustained. In Nesbit v. Frederick Snare Corporation, 68 App.D.C. 263, 96 F.2d 535, the Circuit Court of Appeals for the District of Columbia reviewed the history of analogous Congressional prohibitions that limit the compensation of attorneys who perform services in collecting claims from the Government. Interpreting the intent of the national legislature in passing such limitations, the Circuit Court of Appeals quoted at page 539 of 96 F.2d, the following language from the opinion of Mr. Justice Brandeis in the case of Calhoun v. Massie, 253 U.S. 170, 173, 174, 40 S.Ct. 474, 64 L.Ed. 843: "For nearly three-quarters of a century Congress has undertaken to control in some measure the conditions under which claims against the government may be prosecuted. Its purpose has been in part to protect just claimants from extortion or improvident bargains and in part to protect the treasury from frauds and imposition. See United States v. Van Leuven, D.C., 62 F. 52, 56. While recognizing the common need for the services of agents and attorneys in the presentation of such claims and that parties would often be denied the opportunity of securing such services if contingent fees were prohibited, Taylor v. Bemiss, 110 U.S. 42, 45, 3 S.Ct. 441, 28 L.Ed. 64, Congress has manifested its belief that the causes which gave rise to laws against champerty and maintenance are persistent. By the enactment from time to time of laws prohibiting the assignments of claims and placing limitations upon the fees properly chargeable for services Congress has sought both to prevent the stirring up of unjust claims against the government and to reduce the temptation to adopt improper methods of prosecution which contracts for large fees contingent upon success have sometimes been supposed to encourage."

The prohibition before the Court in the Snare case, supra, read as follows: "Provided, That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or agents, attorney or attorneys, on account of services rendered in connection with said claim.

It shall be unlawful for any agent or agents, attorney or attorneys, to exact, collect, withhold, or receive any sum of the amount appropriated in this Act in excess of 10 per centum thereof on account of services rendered in connection with said claim, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000." Act May 26, 1936, 49 Stat. 2304.

The Circuit Court, in construing the Congressional intent in its limitation of attorneys' fees, based its opinion upon the foregoing statement of the Supreme Court in the Calhoun case, supra, stating at page 539 of 96 F.2d: "Applying this statement and its reasoning to the present case, and having in mind also what we think are the proper inferences to be drawn from the whole opinion in the second Calhoun Case under language similar though not identical, we have reached the conclusion that the congressional policy and purpose is to forestall champertous contracts and to defeat contracts for exorbitant contingent fees and not simply to declare that the government pays claims, but not attorneys' fees. In other words, Congress declares a public policy against high contingent fees on claims which are only collectible by the grace of the government. We think, therefore, that here the congressional purpose may be effectuated by transposing the language of the act to read, 'It shall be unlawful to receive, etc., any sum in excess of 10 per centum of the amount appropriated.' In that view we are in accord with the judgment below."

From the foregoing authorities, it is my thought that the Congress, for the protection of governmental funds, and to save itself from the importunities of overly zealous attorneys, who were themselves to benefit from their successful endeavors, decided upon a rule of public policy that definitely limits the compensation that attorneys for persons having claims against the Government may receive for their services. And, as I think, very wisely, such limitation should apply regardless of the sources from which such compensation may happen to come. In the light of this concept, there is no need to be astute in endeavoring to define and construe words and phrases in such manner as will

frustrate what I believe to be the intention and deliberate purpose of Congress.

Accordingly, defendant's cross-application for summary judgment as to plaintiffs' first cause of action, pleaded in the complaint, will be granted.

Inasmuch as the defendant has not answered plaintiffs' second cause of action, plaintiffs are entitled to summary judgment thereon.