In the Matter of the Estate of OTTO ANNINGER, Deceased.

Surrogate's Court, New York County, June 8, 1962.

*Singer, Levine & Petta* for Bernard E. Singer, as executor, petitioner. *Michael J. Mahoney* for Lotte Zuber, respondent. *Milton Pollack,* respondent in person.

S. SAMUEL DI FALCO, S. The principal objections to the account of the executor relate to payment by the executor from an award made to the executor by the Foreign Claims Settlement Commission of the United States. The decedent had been the owner for many years of shares of stock of a Yugoslav corporation which, for convenience, has been referred to as Dugaresa Corporation. The assets of the corporation were confiscated by the Yugoslav Government and the corporation was thereafter nationalized. The decedent had become a citizen of the United States prior to the confiscation of the property. Pursuant to the provisions of the International Claims Settlement Act of 1949 (U. S. Code, tit. 22, §§ 1621–1642) with respect to claims of the United States citizens within the scope of the Yugoslav Claims Agreement of 1948 (62 U. S. Stat. 2133), the decedent filed a claim with the International Claims Commission of the United States on April 4, 1951. Under a governmental reorganization plan established on July 1, 1954, the International Claims Commission was abolished and its functions were transferred to the newly created Foreign Claims Settlement Commission of the United States. The decedent died July 5, 1954 while his claim was still pending before the commission. The executor continued the prosecution of the claim, and an award was made by the Foreign Claims Settlement Commission. The executor received the total sum of $116,580.54. The claim had been allowed in a larger amount, but the size of the entire fund caused a reduction of the award to the amount received by the executor.

The proceeds of the Dugaresa claim are not the sole asset of this estate. The gross principal assets as reported in the accounting, including the Dugaresa claim, exceed $400,000. The executor reports payment of legal fees equal to 10% of the amount collected on the Dugaresa claim. He paid also an amount equal to 5% of that claim to Edwin A. Binder for services rendered by Binder to the decedent in connection with the claim. The sole residuary beneficiary under the decedent's will challenges all of the payments for services in relation to the Dugaresa claim and to the award of any commissions for receiving and paying the proceeds of that claim. The objectant contends that under the terms of the International Claims Settlement Act of 1949, compensation for services of attorneys, agents or other persons cannot be allowed from the proceeds of the claim unless the amount be first fixed by the Foreign Claims Settlement Commission, and that no allowance having been fixed by the commission in the present case, the executor was not justified in allowing any claim for services in connection with this claim.

Subdivision (f) of section 4 of the International Claims Settlement Act of 1949, as amended (U. S. Code, tit. 22, § 1623, subd. f) provides as follows: "In connection with any claim decided by the Commission pursuant to this subchapter in which an award is made, the Commission *may,* upon the written request of the claimant or any attorney heretofore or hereafter employed by such claimant, determine and apportion the just and reasonable attorney's fees for services rendered with respect to such claim, but the total amount of the fees so determined in any case shall not exceed 10 per centum of the total amount paid pursuant to the award. Written evidence that the claimant and any such attorney have agreed to the amount of the attorney's fees shall be conclusive upon the Commission: *Provided, however,* That the total amount of the fees so agreed upon does not exceed 10 per centum of the total amount paid pursuant to the award. Any fee so determined shall be entered as a part of such award, and payment thereof shall be made by the Secreatry of the Treasury by deducting the amount thereof from the total amount paid pursuant to the award. Any agreement to the contrary shall be unlawful and void. * * * Whoever, in the United States or elsewhere, pays or offers to pay, or promises to pay, or receives on account of services rendered or to be rendered in connection with any such claim, compensation which, when added to any amount previously paid on account of such services, will exceed the amount of fees so determined by the Commission, shall be guilty of a misdemeanor ". (Emphasis added.)

It will be noted that the language of subdivision (f) of section 4 is permissive rather than mandatory. The statute does not say that the commission must in all cases determine the fees of attorneys, but rather that the commission may do so upon proper request. Even if there be a proper request, it would seem that the commission is not under obligation to act. The court understands the commission's practice to be never to refuse a request to apportion attorney's fees, but that in the overwhelming majority of the claims, no such requests are made and as a consequence fees are not determined in such cases. If the commission does undertake to determine the fee at the request of the claimant or the attorney, a written agreement between the parties on that subject is conclusive upon the commission unless the agreement provides for a fee in excess of the amount stated in the statute. It would appear from the text of the statute that wholly apart from any request that the commission determine the fees, any agreement which provides for a fee in excess of 10% of the award is contrary to public policy and void. It is conceded in the present case that the commission was never requested to determine any attorney's fee in this case, and that the commission made no determination or apportionment of any fees.

There is no question that the attorneys who represented the decedent and the estate rendered valuable legal services in connection with the claim. There can be no doubt that the estate is obligated to pay the agreed or reasonable value of the services rendered unless such payment is prohibited by act of Congress. (*Nesbit* v. *Frederick Snare Corp.*, 96 F. 2d 535, 537.) The objectant cites cases which, interpreting other Federal statutes, have ruled that fees could not be paid in excess of a stated amount and that the limitation applied to all fees, compensation and payments for services. Each opinion must be read in the light of the statute then before the court. The various statutes involved in the cited cases are different in text from the statute now under consideration. In all of them there was explicit provision in the statute that fees could not exceed a stated amount, the prohibition extended explicitly to agents, as well as attorneys, and in some of them, approval of the fee schedules by Government officials was prescribed. *Fontheim* v. *Legerlotz* (199 Misc. 308) dealt with the Trading with the Enemy Act (U. S. Code, tit. 50, App., § 20) ; *Hines* v. *Lowrey* (305 U. S. 85) and *Matter of Shinberg* (238 App. Div. 74) related to War Risk Insurance (U. S. Code, tit. 38, § 551) ; *Greenberg* v. *American Sur. Co.* (15 Misc 2d 422), *Nesbit* v. *Frederick Snare Corp.* (*supra*) and *Sutherland* v. *New York & Baltimore Transp. Lines* (43 F. Supp, 94, affd. 125 F. 2d 551) involved special acts of Congress, and *Calhoun* v.

*Massie* (253 U. S. 170) construed the Omnibus Claims Act (38 U. S. Stat. 962). Thus, the Omnibus Claims Act provided that "no part of the amount of any item appropriated in this bill in excess of twenty per centum thereof shall be paid or delivered to or received by any agent or agents, attorney or attorneys on account of services rendered or advances made in connection with said claim." (*Calhoun* v. *Massie, supra,* p. 172.) The Trading with the Enemy Act, prior to its amendment in 1956, provided that no payments should be made thereunder "unless a schedule of fees to be aid to all agents, attorneys at law or in fact, or representatives, for services in connection with such return or payment or judgment, has been furnished to, and approved in accordance with this section by, the President or such officer or agency as he may designate, or the court, as the case may be." (U. S. Code, tit. 50, App., § 20.) As amended, the same act now limits "the aggregate of the fees to be paid to all agents, attorneys at law or in fact, or representatives, for services rendered in connection with such return or payment or judgment" to 10% of the value of such property or payment or interest, but it permits the United States District Court to award fees in excess of 10% in cases of special circumstances or unusual hardship. Thus it will be found that in all of the cited cases, the statute under consideration explicitly and clearly stated the limitation, the persons to whom it was applicable, and the action required by Federal officials. It is true that some of the cases discussed a common policy back of many of the different statutes (see *Calhoun* v. *Massie, supra,* p. 173 and *Nesbit* v. *Frederick Snare Corp., supra,* p. 538), but the policy explicitly stated in other statutes cannot fairly be read into the present statute when the Congress has refrained from including such broad provisions in the present act.

Subdivision f of section 4 of the International Claims Settlement Act does not prohibit the payment of any fees that were not determined or apportioned by the commission. The statute plainly makes it permissive for the interested parties to call upon the commission for a determination. In the absence of any request for a determination, it is not necessary under the statute for the commission to make a determination of fees and a commission determination is not a prerequisite to the allowance of fees. Under generally accepted principles of law, the estate is obligated to pay for legal services rendered to the decedent at his request, and the International Claims Settlement Act does not inhibit the judicial enforcement of that obligation except, perhaps, in a case where the basic agreement contravened the express terms of the statute.

It seems clear that an agreement had in fact been made with the decedent fixing the compensation of the attorneys at 10%, of the recovery and limiting it to that figure. Apparently there were also claims by other members of the family arising out of the Dugaresa confiscation. The same attorneys apparently handled those claims. The decedent's son identified his signature on a letter addressed to the attorneys in September, 1945. Two other members of the family signed that letter. It confirmed oral arrangements theretofore made for legal representation in relation to the Dugaresa claims, and it said: "For your services we agree that you are to have as compensation ten per cent of the amount of any dollars, bonds, credits or other benefits which we may realize thereon, payable as and when received by us and in the form received by us." The letter stated that all expenses and disbursements were to be paid by the owners of the claim and that such " expenses were to be first deducted in arriving at your fees." The witness said that the decedent had signed an identical letter. The attorney executor has searched through his files and has been unable to find such a letter signed by the decedent. He was not examined on this point at the hearing, and would obviously be disqualified under section 347 of the Civil Practice Act from giving testimony as to the making of such an agreement with the decedent. Portions of his examination before trial which were added to the record by stipulation in relation to another point, confirm the making of an earlier oral agreement and the unsuccessful search for a letter integrating the oral agreement.

In any event, even if there were no agreement at all upon the subject, the court finds that a fee of 10%, of the net recovery is a fair and reasonable fee. The services were extensive and substantial and resulted in a financial benefit to the estate. Moreover, such a fee is in accord with the expressions of legislative policy on that subject.

It will be noted that the writing incorporating the earlier oral agreement states that the claimant undertakes " to pay any disbursements or expenses to be incurred in connection with legal or other services to be rendered by others in Central Europe. Such expenses are to be first deducted in arriving at your fees." The executor attorney offered this exhibit in evidence and must be deemed to have assented to its terms. There is no evidence at all with respect to the deduction of any amounts from the award except disbursements of the attorneys themselves. Any other disbursements within the stated class must, of course, be deducted in figuring the total compensation of the attorneys.

Two separate attorneys were involved in the services before the commission. One of them was the executor. The other attorney is in no way connected with the executor in general practice. The executor may not pass upon his own personal claim for services rendered prior to the death of the decedent (Surrogate's Ct. Act, § 212), nor may he make payment on account of his fees for services rendered during the administration of the estate until permitted to do so by court decree. (Surrogate's Ct. Act, § 285; *Matter of Maas,* 38 N. Y. S. 2d 261, 265; *Matter of Seskis,* 6 Misc 2d 762; *Matter of Levine,* 26 Misc 2d 307, 317.) The court holds that the claims for attorney's fees in connection with the Dugaresa claim are valid and enforcible, but the executor should not have paid his own fee prior to court approval thereof. There being objection to such payment by the residuary legatee, the executor would ordinarily be surcharged with interest on the prepayment of his fee. However, under the terms of his agreement, he would be entitled to interest on the delayed payment and the amounts would cancel each other.

The payment to Mr. Binder was made pursuant to a written agreement executed by the decedent and Mr. Binder in March, 1951. In order to protect the decedent's interest from confiscation by the Nazis, an agreement had been made several years earlier that Mr. Binder was to hold nominal ownership of the claim and was to preserve it for the benefit of the decedent. The claim was subsequently reassigned to the decedent. Full disclosure of these activities to the United States was made by the decedent in his claim. In the original negotiations, the decedent had agreed that Mr. Binder would get some compensation for his services if the family was ever able to realize anything out of the Dugaresa claim, but no definite figure was agreed upon. However, in the agreement reduced to writing in 1951, the decedent agreed to pay Binder 5% of the net recoveries that he received in the future from any source on his interest in the Dugaresa enterprise. The term " net recoveries " was defined in the written agreement to mean the full amount of the recoveries " less the legal fees and other expenses and disbursements made in order to procure said payments."

Mr. Binder is not a lawyer, and he did not attempt to render any legal services. The agreement with the decedent did not call upon him to render any services except the use of his name as nominee in order to protect the claim. It is not disputed that he rendered no other services. Subdivision (f) of section 4 of the statute does not prohibit payments to agents, servants or employees in addition to legal fees. Other statutes which are

referred to by the objectant, plainly prohibit any payments to agents, attorneys and others which in the aggregate exceed a stated amount. If subdivision (f) of section 4 attempted to regulate compensation paid to others, as well as to attorneys, and if it prohibited aggregate sums in excess of the amount stated, the objectant's argument would have some basis. However, there is nothing illegal in the contract made between the decedent and Binder, and no statute or rule of law stands in the way of the decedent's performance of his promise. Subdivision (f) of section 4 does not in any way prohibit performance of the agreement with Binder. The payment by the executor of the Binder claim was proper.

The objectant also contends that the executor is not entitled to any commission for receiving or paying the proceeds of the Dugaresa claim. There is nothing in the statute which prohibits the payment of compensation for executorial services in administering this asset. The objectant argues that the award was in fact made to the residuary legatee and was paid to the executor only for transmission to her. There is nothing in the record that would justify such an assumption. The claim was made by the decedent. After his death it was paid to his executor. Subdivision (c) of section 7 of the act (U. S. Code, tit. 22, § 1626, subd. c) explicitly declares that payments made pursuant to the act shall be made only to the person on behalf of whom the award is made, except that " if such person is deceased or is under a legal disability, payment shall be made to his legal representative ". There is no basis for the argument that the claim was not payable in law and in fact to the executor. The executor was required to receive the fund, to administer it, and he will be required to distribute it. Under our statute (Surrogate's Ct. Act, § 285) he is entitled to commissions. There is nothing in the Federal act which prohibits the award of such commissions on such property.

The petition requests the court to fix the fees of the attorney executor, the firm of which he is now a member, and of another attorney for legal services rendered to the estate. The account and the citation state the value of the services of the executor and his firm at $15,000 and the services of the independent attorney at $5,000. The objectant opposes the requested fees as excessive in amount. In addition to the normal services that would be required in an estate of this size, substantial tax questions required the attention of counsel. The court fixes the total compensation of the executor, his firm and the independent attorney in the sum of $17,500. The aggregate sum may be divided among

them as they agree. Disbursements may be taxed in a bill of disbursements which shall itemize all disbursements.

The following rulings are made on the objections: The first objection is sustained by consent. The second objection, like the first, is addressed to the computation of commissions on securities pledged as collateral for a loan. The parties are in agreement on the law but in disagreement as to whether the second item is merely a part of the first. The executor states that the basis for the misunderstanding will be obviated in the supplemental account which he will file. This objection will, therefore, be reserved for determination on the settlement of the decree. The third, fourth and fifth objections are overruled for the reasons stated hereinabove. The sixth objection is to commissions on the amounts paid for services in the Dugaresa matter on the ground that the attorneys could have requested the commission to fix the fees, and in that case the executor would have received the award less such fees. The fact is, however, that the entire award was received, the executor was accountable for it, and the beneficiary was able to bring up all the questions for judicial determination. The objection is overruled. The seventh objection is sustained to the extent of ruling that it was improper for the executor to pay his own personal claim prior to court approval; it is overruled insofar as it seeks repayment of the sum and a surcharge. The fixation of attorneys' fees has disposed of the eighth objection.